[Nos. 45976, 45869, 45999,      En Banc.      February 14, 1980.]
46000, 46046, 46258, 46309.

THE STATE OF WASHINGTON, *Petitioner,* v. PATRICK JEROME HOLSWORTH, ET AL, *Respondents.*

THE STATE OF WASHINGTON, *Respondent,* v. DONALD CARL DENNIS, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent,* v. ALVIN GALLEGOS, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent,* v. RICHARD LEE BOYD, *Petitioner.*

*Christopher T. Bayley* and *Norm Maleng, Prosecuting Attorneys, David Boerner, Chief Deputy, Philip Y. Killien, Senior Deputy, Richard Birinyi, Special Deputy,* and *J. Robin Hunt, Marilyn Showalter, Lee Ann Miller, Barbara D. Johnson,* and *Timothy X. Sullivan, Deputies,* for State.

*Thomas, Whittington & Anderson,* by *Patrick B. Anderson,* for petitioner Gallegos.

*Robert Olson* of *Seattle–King County Public Defender Association,* for petitioner Dennis.

*John G. Ziegler* of *Seattle–King County Public Defender Association,* for petitioners Dennis and Boyd and respondents Holsworth, et al.

HOROWITZ, J.—These cases concern the claimed right of a criminal defendant to challenge the use in a habitual criminal proceeding of certain prior convictions entered before the decision of *Boykin v. Alabama,* 395 U.S. 238, 23 L. Ed.

2d 274, 89 S. Ct. 1709 (1969). The convictions allegedly violate the standards for valid guilty pleas set forth in that case.

Seven cases are consolidated for this appeal. Three of the cases have been decided by the Court of Appeals. In two unpublished decisions the Court of Appeals, Division One, upheld the trial court's consideration in habitual criminal proceedings of convictions on pre–*Boykin* guilty pleas. *State v. Dennis*, 21 Wn. App. 1036 (1979); *State v. Gallegos*, 20 Wn. App. 1039 (1978). In another case the Court of Appeals, Division One, allowed attacks on the use of a pre–*Boykin* conviction, but upheld a trial court determination that the defendant had not shown the challenged guilty pleas to be involuntary. *State v. Boyd*, 21 Wn. App. 465, 586 P.2d 878 (1978). A footnote, added to the Court of Appeals decision in *Dennis* after it was filed, provides as an alternative justification for the holding the defendant's failure to prove the invalidity of his prior guilty pleas. *Dennis*, footnote 1.

Relying on the Court of Appeals decision in *Boyd, supra,* in the four other prosecutions against Holsworth, McMillan, Akridge and Stringer, the King County Superior Court dismissed habitual criminal proceedings in which pre–*Boykin* convictions on guilty pleas were relied on by the State. This court took direct review of the single issue raised in those cases and consolidated the dismissed cases with the three petitions for review granted in the Court of Appeals decisions.

Review has been granted only on the issue of the admissibility of convictions based on pre–*Boykin* guilty pleas. The seven defendants share the following characteristics:

1. Each defendant challenges the use of convictions on guilty pleas entered before *Boykin, supra,* which requires that in order for a guilty plea to be valid the defendant must be apprised of the nature and consequences of the offense to which he pleads guilty. Either one or both of

these disclosures allegedly were not made to the defendant at the time of the prior plea.[1]

2. If the State cannot use the challenged conviction, the defendant cannot be sentenced under the habitual criminal statute, RCW 9.92.090.

3. All but one of the defendants was represented by counsel when the challenged pre–*Boykin* guilty plea was entered.[2]

4. The defendant is not challenging the pre–*Boykin* conviction itself, so as to set it aside, but only its use in the instant habitual criminal proceeding.

This opinion considers the following questions raised:

1. Can the defendant in a habitual criminal proceeding attack the use of convictions based on pre–*Boykin* guilty pleas which allegedly do not meet the criteria for valid guilty pleas set out in that case and in prior Washington cases?

2. If attack on the use of pre–*Boykin* pleas in habitual criminal proceedings is allowed, does the State or the defendant have the burden of proving the validity or invalidity of a guilty plea and the prior conviction based thereon?

We hold that the defendant in a habitual criminal proceeding can attack the use of convictions based on pre–*Boykin* guilty pleas and that the State has the burden of proving beyond a reasonable doubt that the prior conviction was based on a valid guilty plea. Disposition of the individual causes will follow an analysis of our holding.

---

[1]Defendants Stringer, Holsworth, McMillan, Akridge, and Dennis complain that they were not adequately advised of the nature of the offenses to which they pleaded guilty. These same defendants and defendant Boyd allege they were not adequately advised of the sentencing consequences of the offense to which they pleaded guilty. Defendants Gallegos and Dennis complain they were not adequately advised of the constitutional rights necessarily waived by their guilty pleas.

[2]Defendant Dennis waived counsel before entering his guilty plea.

# I
## USE OF PRE-*BOYKIN* PLEAS

*Boykin v. Alabama, supra,* overturned the conviction of a robbery defendant based on his plea of guilty. The record did not show that the defendant knowingly and voluntarily entered his plea and waived his constitutional rights to confront his accusers and to jury trial and against self-incrimination. Justice Douglas, speaking for the United States Supreme Court, stated that criminal defendants who plead guilty demand "the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin v. Alabama, supra* at 243–44, and thus established the rule that the pleading defendant must be apprised of the nature of the offense and the consequences of pleading guilty, in order for the plea to be accepted as knowing, intelligent and voluntary.

To be made sufficiently aware of the nature of the offense, the defendant must be advised of the essential elements of the offense; he must be given "notice of what he is being asked to admit." *Henderson v. Morgan,* 426 U.S. 637, 647, 49 L. Ed. 2d 108, 96 S. Ct. 2253 (1976).[3] The consequences of which the defendant must be advised include not only the sentencing alternatives possible, including specifically any mandatory minimum or possible maximum sentence for the offense to which he pleads guilty. The defendant must also be apprised of his constitutional rights to remain silent, to confront accusers, and to jury trial. He must be made aware that his guilty plea necessarily waives those rights. *Boykin, supra* at 243.

---

[3]Apprising the defendant of the nature of the offense need not "always require a description of every element of the offense . . ." *Henderson v. Morgan,* 426 U.S. 637, 647 n.18, 49 L. Ed. 2d 108, 96 S. Ct. 2253 (1976). At a minimum, however, it would appear that the defendant would need to be aware of the acts and the requisite state of mind in which they must be performed to constitute a crime.

Although neither the United States Supreme Court nor this court has ruled on the issue, *Boykin* has generally not been applied retroactively. *See, e.g., Moss v. Craven,* 427 F.2d 139 (9th Cir. 1970). A rule is applied "retroactively" to events occurring before the rule's promulgation. *See Pape v. Department of Labor & Indus.,* 43 Wn.2d 736, 740–41, 264 P.2d 241 (1953). When retroactive application of a new rule is allowed, it is often accomplished through a collateral attack of the conviction obtained through violation of the rule, *e.g.,* through a personal restraint petition complaining that incarceration is unjustified rather than through appeal of the conviction itself, which is often precluded by time limitations. This court has declined to apply retroactively a rule designed to effectuate *Boykin* in *Wood v. Morris,* 87 Wn.2d 501, 554 P.2d 1032 (1976).

Construing the challenge to the use of pre–*Boykin* pleas in habitual criminal proceedings as an inappropriate collateral retroactive attack on the pleas themselves, the State argues that *Boykin* must not be applied to invalidate these convictions for the purpose of enhanced sentencing.

■ However, the attack in a habitual criminal proceeding on the use of pre–*Boykin* pleas is neither collateral nor retroactive. The challenge instead is to the present use of an invalid plea in a *present* criminal sentencing process.

An analogy must be drawn to *Burgett v. Texas,* 389 U.S. 109, 19 L. Ed. 2d 319, 88 S. Ct. 258 (1967), in which the United States Supreme Court ruled that it was reversible error to admit, for purposes of enhanced sentencing under a habitual criminal statute, evidence of a prior conviction by guilty plea entered by a defendant unrepresented by counsel at the time of the plea. The conviction whose use was successfully challenged in *Burgett* had occurred before *Gideon v. Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963), established the right to counsel. But the Supreme Court refused to allow use of the prior conviction because admission of the evidence would have in effect "renewed" the deprivation of the defendant's constitutional rights.

The State attempts to distinguish the *Gideon/Burgett* analysis as dealing with a right of constitutional magnitude, characterizing the *Boykin* right to be made aware of the nature of the offense and the consequences of pleading guilty as "merely prophylactic," *i.e.,* that failure to afford the defendant his *Boykin* rights is not significant if the danger *Boykin* was intended to thwart—unwitting waiver of the constitutional rights to jury trial, to confront accusers, and to remain silent—is otherwise avoided. It is true, as noted by the State, that the right to counsel may be more assiduously guarded, perhaps because it may help insure the existence of *Boykin* disclosures. Unlike the disclosure requirements of *Boykin,* the *Gideon* right to counsel is specifically enumerated in the Bill of Rights. U.S. Const. amend. 6. But protection of the defendant's right to due process, which is likewise explicitly included in the Bill of Rights, U.S. Const. amend. 5, depends on the defendant's knowledge of the information which must be disclosed under *Boykin. Henderson v. Morgan, supra.*

Both *Gideon* and *Boykin,* then, are "merely prophylactic" to the extent they insure the existence of procedures which protect the defendant's constitutional rights to remain silent, to confront his accusers, and to trial before a jury. Extension of the *Burgett* analysis to the use of pre–*Boykin* pleas which were not adequately informed is justified by the importance of full disclosure to valid waiver of these constitutional rights through the plea of guilty. This is true regardless of whether the defendant was represented by counsel or not, since *Boykin* made it clear that it is the *court's* duty to insure that the defendant is adequately informed and thus capable of entering a constitutional plea. Therefore, the fact that six of these seven defendants were represented by counsel at the time of their pre–*Boykin* pleas is immaterial in this analysis, as is defendant Dennis' lack of representation in his prior plea.

This concern that the guilty plea represents a truly knowing and voluntary waiver of the defendant's constitutional rights is also manifested and compelled by the due

process requirement that a guilty plea be fully informed in order to be voluntary. In *Henderson v. Morgan, supra,* the Supreme Court affirmed the finding in a habeas corpus proceeding that the defendant's pre–*Boykin* 1965 guilty plea to second–degree murder was involuntary and set the conviction aside. The defendant had not been advised that intent to cause death was an essential element of the crime to which he had pleaded guilty. Justice Stevens, writing for the court, noted that "clearly the plea could not be voluntary in the sense that it constituted an intelligent admission that he committed the offense unless the defendant received 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Henderson v. Morgan, supra* at 645, quoting *Smith v. O'Grady,* 312 U.S. 329, 334, 85 L. Ed. 859, 61 S. Ct. 572 (1941). The court therefore concluded "[s]ince respondent did not receive adequate notice of the offense to which he pleaded guilty, his plea was involuntary and the judgment of conviction was entered without due process of law." *Henderson v. Morgan, supra* at 647. *See also McCarthy v. United States,* 394 U.S. 459, 22 L. Ed. 2d 418, 89 S. Ct. 1166 (1969).

That pleas made without proper advice and knowledge of their consequences violated the defendant's constitutional rights to due process was the law long before *Boykin* established the court's duty to insure that the defendant had been fully apprised of the nature of the offense and the consequences of pleading guilty thereto. "[A] plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences." *Kercheval v. United States,* 274 U.S. 220, 223, 71 L. Ed. 1009, 47 S. Ct. 582 (1927). *See also Machibroda v. United States,* 368 U.S. 487, 493, 7 L. Ed. 2d 473, 82 S. Ct. 510 (1962). In order for the waiver of constitutional rights implicit in a guilty plea to meet the requirements of the due process clause, the plea must constitute "an intentional relinquishment or abandonment of a known right or privilege," *Johnson v. Zerbst,* 304 U.S. 458, 464, 82 L. Ed. 1461,

58 S. Ct. 1019, 146 A.L.R. 357 (1938), possible only after advisement of the right to trial by jury and confrontation of accusers and the privilege against self-incrimination.

Thus, it can be seen that failure to disclose the nature of the offense or consequences of a plea may result in a procedural defect of constitutional magnitude if the defendant's plea as a consequence of that failure is involuntary. As in *Burgett*, violation of the defendant's constitutional rights is "renewed" through use in a habitual criminal proceeding of an uninformed guilty plea which thus violates due process.

Such a conclusion is further supported by the historical insistence by this court that the pleading defendant be fully apprised of the nature and consequences of the offense to insure that his or her guilty plea is freely, unequivocally, knowingly and intelligently made. Three years before the United States Supreme Court's decision in *Boykin,* this court expressly articulated the importance of full disclosure to a constitutional guilty plea:

> To be voluntary, a plea of guilty must be freely, unequivocally, intelligently and understandingly made in open court by the accused person with full knowledge of his legal and constitutional rights and of the consequences of his act. . . .
>
> Before accepting a plea of guilty from an accused person, it is the duty and responsibility of the trial judge to satisfy himself that the plea is in fact voluntary, and to ascertain that the accused person fully appreciates and understands the consequences of his plea. This should be done whether the accused is represented by counsel or not, and the trial judge's inquiries together with the accused person's responses should be made a matter of record so that doubt may not later be cast upon the propriety of the proceedings. Though a failure on the part of the trial judge to fully determine the voluntariness of a plea does not necessarily constitute a deprivation of due process of law, such a failure readily lends itself to such a claim.

*Woods v. Rhay,* 68 Wn.2d 601, 605, 414 P.2d 601 (1966). This court thus presaged the holding of *Boykin. Boykin v. Alabama,* 395 U.S. 238, 244 n.6, 23 L. Ed. 2d 274, 89 S. Ct.

1709 (1969). Even many years before the United States Supreme Court's decision this state had adopted the principles supporting *Boykin's* disclosure requirements in considering the validity of guilty pleas.

For example, in *State v. Cimini,* 53 Wash. 268, 271, 101 P. 891 (1909), this court stated that in order for a plea to be valid it must be entered "without hope or fear, without improper influence or promise, [and] *with full knowledge of his legal and constitutional rights and of the consequences of his act . . .*" (Italics ours.) The rape conviction of the defendant on a guilty plea was reversed and the case remanded for jury trial in *State v. Taft,* 49 Wn.2d 98, 102, 297 P.2d 1116 (1956), because the defendant was not told of the nature of the crime and had "pleaded guilty under a misapprehension as to the essential elements of the crime of rape . . ." The court ruled that since Taft "did not plead guilty understandingly he was . . . denied a constitutional right." *State v. Taft, supra* at 103.

Affirmation of the defendant's right to attack the use of an allegedly uninformed prior plea in a habitual criminal proceeding is merely another manifestation of this state's continuing and long-standing concern that the defendant suffer the consequences of only freely, unequivocally, knowingly and intelligently made guilty pleas. Even if the United States Supreme Court had not promulgated the *Boykin* standards, Washington law would require that the prior conviction relied on by the State in a habitual criminal proceeding be based only on a guilty plea entered by the defendant with full knowledge of the nature of the offense to which he pleads guilty and of the consequences of his plea.[4]

---

[4]Some of the prior convictions relied on by the State in these cases occurred in other states. Those convictions may or may not have been based on adequately informed guilty pleas under the rules of those states prior to *Boykin.* However, because under RCW 9.92.090 the State must prove that the defendant has been validly convicted of three crimes that would be felonies under the law of Washington, the use of the prior convictions is unjustified if they were not based on guilty pleas adequately informed under the pre-*Boykin* rules of *this* state.

■ We therefore hold that the defendant in a habitual criminal proceeding can challenge the use of pre–*Boykin* pleas on the ground that he or she was not apprised of the nature of or of the consequences of pleading guilty to the prior offense. Because we do not consider this application of *Boykin* principles to be either retroactive or a collateral attack we do not reach or assess the validity of the Court of Appeals holding in *State v. Boyd,* 21 Wn. App. 465, 586 P.2d 878 (1978), that attack, although collateral, would be allowed because the plea defect was of a constitutional nature.

## II
### BURDEN OF PROOF

■ Having allowed the defendant to challenge the use of his pre–*Boykin* plea in a habitual criminal proceeding, we must determine who will bear the burden of proving the invalidity or validity of the guilty plea and the prior conviction based thereon for purposes of enhanced sentencing. Of course, the defendant must first call attention to the inappropriateness of using a pre–*Boykin* plea. But once the defendant raises the issue, the State must bear the burden of proving that the pre–*Boykin* conviction is based on a knowing guilty plea entered after disclosure of the nature and consequences of the offense, and is thus usable in the habitual criminal proceeding. The existence of three valid felony convictions is an element of the habitual criminal status which must be proved by the State beyond a reasonable doubt under RCW 9.92.090. *State v. Kelly,* 52 Wn.2d 676, 328 P.2d 362 (1958); *State v. Harkness,* 1 Wn.2d 530, 96 P.2d 460 (1939). A felony conviction usable in a habitual criminal proceeding cannot rest on a guilty plea that does not meet the standards set out in *Boykin.*

We find unpersuasive the State's argument that the defendant must have the burden of proving he was not adequately informed because of the rule that he must prove in a collateral attack that a prior conviction was obtained in violation of constitutional rights. *Miesbauer v. Rhay,* 79

Wn.2d 505, 487 P.2d 1046 (1971), *overruled prospectively on different grounds, Wood v. Morris, supra.* As discussed above, however, this challenge is not a collateral retroactive attack, but rather goes to the present use of a prior conviction to prove the essential element of a present charge.

In addition, the State's contention that the defendant must be required to show affirmatively that he suffered actual prejudice through nondisclosure, *i.e.,* that had he been aware of the nature and consequences of the offense he would not have pleaded guilty, is likewise unfounded. The challenge is not a collateral retroactive attack to set aside the prior conviction, but a challenge to the present use of a prior conviction; "prejudice" is therefore inherent in the fact that allowing use of the conviction will enhance the possible sentence for the present conviction to life imprisonment.

Placing the burden of proving disclosure on the State does not, of course, limit the proof available to the court record in the prior conviction. As set out by this court in *Wood v. Morris, supra,* the court may consider extrinsic evidence in determining whether the defendant was adequately advised in pleas entered prior to September 1976, the date of that decision. Admission of this evidence is a practical concession to the fact that many earlier pleas have not been adequately preserved in records designed to note the disclosures made to the defendant.

We therefore hold that, once the issue is raised by the defendant, the State has the burden of proving beyond a reasonable doubt that the defendant, in a prior conviction relied on by the State to prove his habitual criminal status, was apprised of the nature of and consequences of pleading guilty to the offense to which he pleaded guilty. Extrinsic evidence may be considered for any conviction entered before September 1976. Because of our holding the Court of Appeals decision in *Boyd* and alternative finding in *State v. Dennis,* 21 Wn. App. 1036 (1979), that the defendants had not met the burden of proving the invalidity of prior convictions are reversed.

## III

The defendant in a habitual criminal proceeding may challenge the use of pre–*Boykin* pleas. The State has the burden of proving beyond a reasonable doubt that the plea was knowingly made after the defendant was apprised of the nature of the offense and of the consequences of pleading guilty to it, including possible maximum and mandatory minimum sentences upon conviction and the constitutional rights to jury trial, to confrontation, and to remain silent, waived by the plea.

The dismissals of the habitual criminal proceedings against the defendants Holsworth, McMillan, Akridge, and Stringer, should be affirmed. The conclusions that defendants Boyd, Dennis, and Gallegos are habitual criminals should be set aside and those causes remanded to the trial court for resentencing proceedings, in which the State shall be given the opportunity to prove beyond a reasonable doubt that the defendants' respective prior convictions, relied on in the respective habitual criminal proceedings, were validly obtained under the disclosure standards of this state and the United States Supreme Court, as set out by that court in *Boykin*.

It is so ordered.

UTTER, C.J., and ROSELLINI, STAFFORD, WRIGHT, BRACHTENBACH, DOLLIVER, HICKS, and WILLIAMS, JJ., concur.

Reconsideration denied May 5, 1980.