[No. 8056–3–I.   Division One.   July 6, 1981.]

THE STATE OF WASHINGTON, *Respondent,* v. ERNEST
BROWN, *Appellant.*

*Barry L. Flegenheimer* of *Seattle–King County Public Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Carol Hepburn, Deputy,* for respondent.

RINGOLD, A.C.J.—Ernest Brown appeals the judgment and sentence entered upon his conviction of two counts of second degree rape and a finding that he is a habitual criminal. Consolidated with this appeal is Brown's appeal of an order revoking probation on a 1978 escape conviction. We affirm in both cases.

On February 7, 1979, Delbert Sheeler and Ernest Brown met two women, Ms. S and Ms. B, at a pool hall in downtown Seattle. After Sheeler, Brown and the two women played pool together, they decided to go to Sheeler's hotel room to smoke marijuana and drink liquor. Ms. S and Ms. B testified that in the hotel room, Brown became angry at what he felt was Ms. B's disrespectful view of his prior experience as a pimp. They testified that Brown struck Ms. B with his hand and with a bent wire clothes hanger causing her severe pain and swelling. During the altercation,

Ms. B grabbed a beer bottle, tried unsuccessfully to break it, and Brown then grabbed and removed it from her hand. Brown ordered both women to remove their blouses and they complied because they were afraid of being hit. After Brown and Sheeler discussed how much the women would be worth on the street, Brown turned off the light and ordered Ms. B to lie on the floor. Brown does not dispute the sufficiency of the evidence to show that he raped Ms. B on the floor and was an accomplice to Sheeler's rape of Ms. S on the bed.

Testifying in his own defense, Brown denied using the wire hanger to strike Ms. B and claimed that he struck her only in self–defense. He also denied that any rapes occurred, claiming that both women consented to sexual intercourse.

Pursuant to a plea bargain, Sheeler testified in rebuttal on behalf of the State. The trial court advised the jury that they should view an alleged accomplice's testimony with caution before using it to convict the defendant. Sheeler's testimony tended to corroborate both the State's case and Brown's defense. He aided the defense by testifying that he did not rape anyone. He testified that Ms. S consented to his advances and that Ms. B was the initiator of the struggle with Brown. According to Sheeler, Brown was correct when he testified that he struck only in self–defense. Sheeler also testified that he did not believe that Brown raped Ms. B. Sheeler's testimony corroborated the State's case by contradicting some of Brown's testimony.

Brown was convicted on both counts of second degree rape and the prosecutor filed a supplemental information, alleging that Brown was a habitual criminal convicted of first degree possession of stolen property in December 1976 and second degree escape in 1978. Brown waived a jury trial and filed a motion to strike the 1978 escape conviction on the ground that at the time of the plea of guilty, he was not fully advised of the consequences of the plea. The trial court denied the motion and found Brown was a habitual criminal. Brown did not challenge the validity of his prior

conviction for possession of stolen property.

Brown's appeal raises questions about the State's plea bargain with Sheeler and its use in closing argument, the trial court's refusal to give a lesser included offense instruction and the validity of Brown's prior convictions.

## PLEA BARGAIN

The initial agreement between Sheeler and the State was that in return for Sheeler's truthful testimony at Brown's trial, he would be allowed to plead guilty to the lesser offense of first degree rendering criminal assistance and would receive a sentencing recommendation from the prosecutor of probation and 6 months in the county jail. At the request of Sheeler's attorney, the plea was delayed until after Brown's trial so Sheeler could have the benefit of seeking a dismissal or acquittal if Brown were acquitted. Sheeler's attorney advised him that his chance of acquittal would be very good if Brown were acquitted and in that event he would probably recommend going to trial. The State made no promises as to what it would do if Brown were acquitted, but agreed to allow a plea of guilty to the lesser offense if Sheeler testified truthfully and Brown were convicted. At trial, Sheeler testified on cross–examination that he understood that in return for his testimony, he would be allowed to plead guilty to the lesser offense if Brown were convicted. No questions were directed to his understanding of the agreement in case of Brown's acquittal.

Brown contends that Sheeler's testimony was too untrustworthy to use at trial because Sheeler believed the State would allow him to plead guilty to a lesser offense only if his testimony achieved Brown's conviction. *Franklin v. State,* 94 Nev. 220, 577 P.2d 860 (1978). In *Franklin,* at pages 225–26, the Nevada court stated:

> By bargaining for specific testimony to implicate a defendant, and withholding the benefits of the bargain until after the witness has performed, the prosecution becomes committed to a theory quite possibly inconsistent with the truth and the search for truth. We deem

this contrary to public policy, to due process, and to any sense of justice.

While we agree with this statement of law, we find no basis for finding that the prosecutor here entered into a coercive plea bargain with Sheeler. Sheeler's attorney sought the delayed plea and advised Sheeler that he would have a good chance of an acquittal if Brown were acquitted. There is no evidence that Sheeler believed otherwise. His testimony aided the prosecution only insofar as it contradicted Brown on several of the details about events prior to and after the alleged rapes. On the ultimate issues of whether a rape occurred and whether Brown acted in self–defense, Sheeler's testimony supported Brown. We have no reason to believe the plea bargain tended to compel Sheeler to testify untruthfully in order to secure Brown's conviction.

### STATE'S CLOSING ARGUMENT

Brown contends that the deputy prosecutor engaged in prejudicial misconduct by arguing to the jury that Sheeler's intent to plead guilty was evidence of Brown's guilt. The deputy prosecutor, however, reminded the jury of the court's instruction to view an alleged accomplice's testimony with caution. She stated that she would be satisfied if they ignored Sheeler's testimony. In response to Sheeler's claim that he did not rape anyone, she reminded the jury of his intent to plead guilty to another offense. She did not argue that this intent was evidence of Brown's guilt. There was no objection by Brown and no request to limit the force of that argument with a curative instruction. A properly worded instruction could have eliminated the possibility that the jury might draw the unstated inference that Brown's guilt was proved by Sheeler's intent to plead guilty. Unless the prosecutor's argument is flagrant and ill intentioned and the resulting prejudice is so enduring that jury admonitions could not neutralize its effect, any claimed error is waived by failure to object and request a curative instruction. *State v. Charlton,* 90 Wn.2d 657, 585 P.2d 142 (1978).

## LESSER INCLUDED OFFENSE

Before the case was submitted to the jury, the State requested and received an instruction on the lesser offense of third degree rape. Brown's request for a simple assault instruction was rejected. Brown contends that his theory of the case was that an assault occurred but that it did not cause the victim to submit to rape. Brown wanted to argue to the jury that the parties reconciled after the fight and engaged in voluntary intercourse.

■ To obtain a lesser included offense instruction, two conditions must be satisfied. First, each element of the lesser offense must be a necessary element of the greater offense so that it is impossible to commit the greater offense without also committing the lesser offense. Second, the evidence in the case must support an inference that the lesser offense was committed. RCW 10.61.006; *State v. Workman,* 90 Wn.2d 443, 584 P.2d 382 (1978); *State v. Donofrio,* 141 Wash. 132, 250 P. 951 (1926); *State v. Livengood,* 14 Wn. App. 203, 540 P.2d 480 (1975).

We conclude that the second condition was not satisfied because the record contains no evidence to support a finding of simple assault. The evidence supports two possible findings: (1) Brown acted in self–defense and therefore committed no assault; or (2) Brown committed second degree assault because he used an instrument or thing likely to produce bodily harm—the wire coat hanger. RCW 9A.36.020(1)(c). Without evidence to support a finding of simple assault, the trial court properly refused the requested instruction. *State v. Workman, supra.*

## PRESENT USE OF PRIOR CONVICTIONS

Brown raises several contentions challenging the validity of his guilty pleas in both prior convictions proved by the State at the habitual criminal trial. While some of his arguments were not raised below, we assume, without deciding, that he may raise constitutional issues concerning the pleas for the first time on appeal. *See In re Lee,* 95 Wn.2d 357, 364, 623 P.2d 687 (1980); *State v. Chervenell,*

28 Wn. App. 805, 626 P.2d 530 (1981). Because both prior convictions were after the decision in *Wood v. Morris,* 87 Wn.2d 501, 554 P.2d 1032 (1976), we are limited to the record of those proceedings in deciding the validity of the pleas. The record on appeal contains the verbatim reports and written statements signed by Brown for both prior pleas. Thus, the record is complete, and we can properly consider any constitutional issues not raised before the trial court in the habitual criminal proceeding. *State v. Brown,* 29 Wn. App. 1, 627 P.2d 142 (1981); *cf. State v. Chervenell, supra* (inadequate record required a remand).

The State argues that the defendant's right to challenge the admissibility of prior judgments of conviction is limited to those convictions entered before the decision in *Boykin v. Alabama,* 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969). The leading case, *State v. Holsworth,* 93 Wn.2d 148, 607 P.2d 845 (1980), allowed the defendant to challenge the admissibility of prior convictions resulting from pre–*Boykin* pleas. The holding in *Holsworth* was thereafter applied to a post–*Boykin* plea in *State v. Rinier,* 93 Wn.2d 309, 609 P.2d 1358 (1980). We hold, therefore, that *Holsworth* does not limit the challenge to only pre–*Boykin* convictions.

## THE 1976 PLEA

The 1976 charge, judgment and sentence were for first degree possession of stolen property. RCW 9A.56.150. The statement on plea of guilty erroneously named first degree theft as the offense. The trial court, after initially referring to the offense as first degree possession of stolen property, labeled the offense as first degree theft throughout the rest of the plea hearing. Brown contends that the conviction is inadmissible because he did not know the actual offense he was admitting. He also contends the trial court did not advise him of two of the elements of the offense, knowledge and value.

The record reflects that the trial court merely gave the offense the wrong name while advising Brown of the

essential elements and consequences of the actual offense, first degree possession of stolen property. During an examination of the defendant that was a model of careful, thorough questioning designed to insure a voluntary plea, the trial court informed Brown that the offense required him to have "items that were stolen, knowing that they were stolen." After reading Brown's written description of the offense,[1] the trial judge asked if the value of the stolen property was over $1,500 and Brown answered in the affirmative. While not expressly advising Brown of the value element, the trial court complied with its constitutional duty to determine that Brown was aware of the essential elements, the act and mental state necessary to the commission of the crime. RCW 9A.56.140–.150; *In re Keene*, 95 Wn.2d 203, 207–08, 622 P.2d 360 (1980); *State v. Holsworth, supra* at 153 n.3. The parties' misapprehension concerning the name of the offense was constitutionally insignificant where the defendant was advised of the essential elements of the correct crime, Brown's written description of the offense provided a factual basis for the plea, and he was aware of the consequences of his plea.

### THE 1978 PLEA

According to representations at the habitual criminal proceeding, the 1978 escape charge resulted from an incident after Brown was arrested for parole violation, failing to report to the parole officer as required. While handcuffed at the police station, Brown fled and was quickly apprehended 1 block away.

Brown was charged with first degree escape and, pursuant to a plea bargain, pleaded guilty to second degree escape. Consistent with the State's recommendation, the trial court granted probation. The parole revocation hearing was after sentencing, and we have no record of the decision at that hearing.

---

[1]Brown stated: "On October 24 1976 I stole leather coats from Bugatti Leather. This was done without permission of the owner. Value of the coats exceeded $1500."

Brown's contention below and on appeal concerns the effect of RCW 9.92.080(1), which provides:

Whenever a person while under sentence of felony shall commit another felony and be sentenced to another term of imprisonment, such latter term shall not begin until the expiration of all prior terms: *Provided,* That any person granted probation pursuant to the provisions of RCW 9.95.210 and/or 9.92.060 shall not be considered to be under sentence of a felony for the purposes of this subsection.

Brown contends the 1978 trial judge should have advised him that the direct effect of his plea was to subject him to consecutive terms of imprisonment. *In re Williams,* 21 Wn. App. 238, 583 P.2d 1262 (1978). His argument would be more persuasive if, at the time of the second felony, he had been imprisoned in a state institution. Where, however, a defendant is on parole or faces a parole revocation hearing, it is possible that the parole board will not revoke parole despite the occurrence of the second offense. Consecutive terms would be served only if parole were revoked.

RCW 9.92.080(1) has only an indirect effect under the facts of this case because future action of another state agency, not the court's acceptance of the plea, controls the effect of that statute. In *State v. Barton,* 93 Wn.2d 301, 609 P.2d 1353 (1980), the court held that a defendant need not be advised of a possible effect of a plea that turned upon the discretionary decision of another state agency. The *Barton* court rejected the defendant's argument that upon a plea to a third felony he should be advised of the possibility of a habitual criminal proceeding. *In re Williams, supra,* is distinguishable because the trial court in that case erroneously advised the defendant that he would receive concurrent terms of imprisonment. There was no erroneous advice here. In accord with *Barton,* we hold that where an accused is on parole or faces a parole revocation hearing, the trial court does not have to advise the accused of the possible impact of RCW 9.92.080(1) when accepting his guilty plea.

Brown next contends that his plea was invalid because he was not advised of the mental element of the offense—knowledge that his actions would result in leaving physical confinement without permission. *State v. Descoteaux,* 94 Wn.2d 31, 614 P.2d 179 (1980). *In re Keene, supra* at pages 207–08, discussed the constitutional implications of this omission.

> A guilty plea cannot be voluntary in the sense that it constitutes an intelligent admission unless the defendant is apprised of the nature of the charge, "'the first and most universally recognized requirement of due process.'" *Henderson v. Morgan,* 426 U.S. 637, 645, 49 L. Ed. 2d 108, 96 S. Ct. 2253 (1976), quoting *Smith v. O'Grady,* 312 U.S. 329, 334, 85 L. Ed. 859, 61 S. Ct. 572 (1941). *See* Criminal Rules Task Force, *Washington Proposed Rules of Criminal Procedure* (1971), Comment at 60.
>
> Apprising the defendant of the nature of the offense need not "always require a description of every element of the offense . . ." *Henderson v. Morgan,* 426 U.S. 637, 647 n.18, 49 L. Ed. 2d 108, 96 S. Ct. 2253 (1976). At a minimum, however, it would appear that the defendant would need to be aware of the acts and the requisite state of mind in which they must be performed to constitute a crime.

*State v. Holsworth, supra* at 153 n.3.

The test of constitutional validity of the plea here is whether Brown was "aware of the . . . requisite state of mind".

At the plea hearing, the trial court questioned the defendant directly about his conduct.

> THE COURT: In your own words, what did you do to be guilty of the charge?
>
> THE DEFENDANT: Escaped.
>
> THE COURT: From where?
>
> THE DEFENDANT: Police custody in the City Jail; Police Station.
>
> . . .
>
> THE COURT: What was the nature of the escape? Did he use physical violence to escape? What did he do?
>
> MR. KILPATRIC: No, there was no injuries to the officers. It was just a break from custody.
>
> THE COURT: Tell me in your own words what hap-

pened.

THE DEFENDANT: They brought me down to the Police Station.

THE COURT: Were you in handcuffs?

THE DEFENDANT: Yes.

THE COURT: Were you cuffed to an officer?

THE DEFENDANT: No.

THE COURT: Handcuffs were where, behind or in front of—

THE DEFENDANT: Behind me.

THE COURT: You ran away?

THE DEFENDANT: Yeah.

In his written plea statement Brown said: "On August 15, 1978 I escaped from the custody of Seattle Police Officers in King County Washington." He also acknowledged in his written statement that he received a copy of the original information charging first degree escape.

Brown was aware that the nature of the charge was escape. Common usage of the word "escape" imports leaving physical confinement without permission. The colloquy between Brown and the court establishes Brown's awareness that criminal escape imports acting knowingly. Brown acknowledged that he ran away from the city jail while in police custody and handcuffed. His responses to the trial court's questioning demonstrate beyond a reasonable doubt his awareness that the offense he was admitting involved knowledge that his flight would result in leaving confinement without permission. *State v. Descoteaux, supra; State v. Holsworth, supra.*

Brown, at his probation revocation hearing on the escape charge, renewed his motion to declare his plea invalid. In effect, he was moving to withdraw his plea after the suspension of sentence pursuant to CrR 7.1(c). Because we have found the plea valid, there is no manifest injustice requiring withdrawal of the plea. *State v. Barton, supra.*

The order revoking probation and imposing a judgment and sentence on the escape conviction was properly based upon the present rape convictions. We affirm the judgments

and sentences in both cases.

SWANSON and DURHAM, JJ., concur.

Reconsideration denied August 4, 1981.

Review denied by Supreme Court October 30, 1981.