**FILED**
**APRIL 4, 2024**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 38985-5-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| EDWARD LEON NELSON, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Edward Leon Nelson1 appeals the trial court's order
amending his judgment and sentence. Mr. Nelson argues (1) his court-appointed counsel
was ineffective when defense counsel took an adverse position to him, and (2) the trial
court abused its discretion when it denied his motion for new appointed counsel without
adequately inquiring into the nature of the purported conflict. Mr. Nelson also raises four
additional issues in his statement of additional grounds for review. We reject his
arguments and affirm.

---

1 Mr. Nelson recently changed his name to "Is-real Almighty Divine." Order
Changing Name, No. NC24-0011 (Grays Harbor County Dist. Ct., Wash. (Mar. 7, 2024).

No. 38985-5-III
*State v. Nelson*

FACTS

This appeal is one of numerous direct appeals and collateral attacks filed by Mr.

Nelson stemming from his convictions in Yakima County Superior Court cause

14-1-01197-6.[2]  The underlying facts and procedure of his case have been well

documented.  We mostly limit our discussion to the resentencing hearings to resolve the

issues now raised.

In 2016, a jury convicted Mr. Nelson of attempted first degree robbery with a

firearm enhancement and attempting to elude a police vehicle.  *State v. Nelson*, No.

34032-5-III, slip op. at 7 (Wash. Ct. App. May 2, 2017) (unpublished), https://courts.

wa.gov/opinions/pdf/340325_ord.pdf.  The trial court sentenced him to life without

parole as a persistent offender under Washington's "three strikes" law.[3]  During

sentencing for the 2016 convictions, the trial court determined that two of Mr. Nelson's

_____

[2] This petition is one of 24 appellate review proceedings Mr. Nelson has initiated
to challenge his convictions and sentence in Yakima County Superior Court case no.
14-1-01197-6.  Mr. Nelson has previously sought direct appeal under numbers 34032-5-
III, 37093-3-III, 37219-7-III, 37238-3-III, 37595-1-III, and 37907-8-III, 38296-6-III.  Mr.
Nelson has previously initiated collateral attacks under numbers 34658-7-III, 35738-4-III,
37144-1-III, 37378-9-III, 37392-4-III, 37594-3-III, 38004-1-III, 38518-3-III, 38691-1-III,
38838-7-III, 39199-0-III, 38764-0-III, 39288-1-III, and 39819-6-III.  Collateral attack is
still pending in number 38986-3-III.  Discretionary review is pending in 40144-8-III.
[3] Generally referring to the Persistent Offender Accountability Act of the
Sentencing Reform Act of 1981, chapter 9.94A RCW.  Mr. Nelson's three strike
convictions (most serious offenses) include: (1) 1988 attempted first degree robbery and
second degree kidnapping convictions; (2) a 1991 first degree promoting prostitution
conviction; and (3) the 2016 attempted robbery in the first degree conviction.

prior convictions for unlawful possession of a controlled substance interrupted the

washout period for his second strike offense. We affirmed Mr. Nelson's convictions and

sentence on direct appeal. *Id*. at 21. Our Supreme Court also affirmed. *State v. Nelson*,

191 Wn.2d 61, 77, 419 P.3d 410 (2018).

Following our Supreme Court's decision in *State v. Blake*, 197 Wn.2d 170, 481

P.3d 521 (2021), which declared the unlawful possession of controlled substances statute

unconstitutional and void, Mr. Nelson filed a CrR 7.8 motion to vacate his two prior

convictions for that offense.[4] He argued that removal of those convictions caused his

second strike offense to wash out so that his life sentence under the persistent offender

statute became invalid.

On April 28, 2022, the trial court held a resentencing hearing. The State conceded

that the vacation of the April 2000 unlawful possession conviction impacted Mr.

Nelson's second strike offense, but that other convictions newly found under his alias,

"Marius Anson Frasier," prevented the second strike offense from washing out. Rep. of

Proc. (RP) (Apr. 28, 2022) at 27. Defense counsel raised several issues with respect to

the newly found convictions and argued that none of them prevented the second strike

offense from washing out. Ultimately, the court considered the newly discovered 2008

gross misdemeanor conviction of obstructing a law enforcement officer and determined

---

[4] This motion is not in the record.

that this conviction precluded the second strike offense from washing out. The court

adjourned the hearing to allow the prosecutor time to prepare proposed written findings

and conclusions and an amended judgment and sentence.

At the second hearing, which occurred in May 2022, Mr. Nelson asked if the court

would rule on a motion he filed alleging ineffective assistance of counsel and a motion to

arrest the judgment. The court declined ruling on his motions and explained that it would

transfer the motions to the Court of Appeals as a personal restraint petition. The trial

court then adjourned the case to allow defense counsel to review the State's proposed

findings and conclusions.

Prior to the third hearing, which occurred in June 2022, Mr. Nelson filed

additional motions in the case, including a pro se motion to dismiss and a pro se motion

to stay enforcement of the amended judgment and sentence. At the June 2022 hearing,

the trial court stated it would allow Mr. Nelson to argue these motions before it would

sign its findings and conclusions. The court asked Mr. Nelson why it should stay

enforcement of the amended judgment and sentence, and the following exchange

occurred:

> MR. NELSON: Your Honor, my [CrR] 8.3 motion was based on
> [appointed counsel] being reassigned to this case—
>     . . . .
>      . . . after he had already told the Court that there was a conflict of
> interest. . . . [Appointed counsel] made the Court aware that there was a

4

conflict of interest and he couldn't represent me any further and the Court reappointed him. And so, I think I'm being prejudiced by that. . . . [T]here's no way I can get a fair trial.

And I don't know if [appointed counsel] wants to address that issue, but I think now would be a good time for that.

THE COURT: Well, so do you have—do you have a transcript of—of a hearing where [appointed counsel] represented that he couldn't represent you because of a conflict of interest? Is there—is there some evidence that you're relying upon that you haven't presented in your motion, other than just a simple statement?

MR. NELSON: I don't have the transcripts available, Your Honor, but they were on or about April 2nd of 2020.

THE COURT: And so, I—I guess, without proof of that, you're just simply asking me to—to rely upon your recollection, correct?

MR. NELSON: No. Well, counsel is available, Your Honor. Can he possibly respond?

THE COURT: [Appointed counsel], do you have any recollection at all of the statements being made by Mr. Nelson? I mean, unfortunately this kind of puts you into a—between a rock and a hard spot because you're— you're being called upon to perhaps testify potentially against your client. And I see that as a real problem. But I guess that begs the question, Mr. Nelson, are you representing yourself on these motions to stay and motion to dismiss?

MR. NELSON: I am, Sir. . . .

RP (June 7, 2022) at 111-12.

After more discussion between the court and Mr. Nelson, the prosecutor asked the court to clarify whether Mr. Nelson was proceeding pro se on the motions he filed. The court pointed out that the motions were handwritten and specifically stated that they were filed pro se by Mr. Nelson. However, the court asked Mr. Nelson whether it was his intent to represent himself pro se on all of his motions. Mr. Nelson responded:

5

> . . . No, Your Honor. Your Honor, excuse me. Just in a nutshell, the [CrR] 8.3, Your Honor, is based on this here. I filed over fifteen [CrR] 7.8s. There's three open direct appeals going on right now. I filed them all *pro se*. [Appointed counsel] was my trial attorney.
>
> . . . .
>
> . . . Could this—I mean, you mean to tell me [appointed counsel] didn't see any of these errors? I filed like fifteen [CrR] 7.8s and now the Court has reappointed [appointed counsel] and there's the con—therein lies the conflict right there. It—it—it's kind of ludicrous that he's back on the case. And this is why we have a conflict of interest as of right now today. It's—I need new counsel, Your Honor. I'm begging the Court; I need new counsel.

RP (June 7, 2022) at 126-27.

After another prolonged back-and-forth discussion, the trial court attempted to

bring Mr. Nelson back to the issues before it:

> [THE COURT:] The issue that you raise today is that—that you allege that [appointed counsel] was ineffective as a counselor in this case and that the Court erred in number one—reappointing him in this case. And number two—that he was ineffective in . . . representing you on this resentencing.
>
> The Court . . . does not find in your favor [on your arguments]. . . . The Court has found no evidence and you've presented no evidence that is sufficient enough to establish that number [one]—that [appointed counsel] did anything that would be ineffective assistance of counsel. And number two—there is no showing whatsoever that it would have had a material impact upon the Court's ruling in this case.
>
> And for those reasons, I am denying your motion to [appoint new counsel due to your assertion that you previously received] ineffective assistance of counsel. . . .
>
> . . . .
>
> [THE COURT:] So, Mr. Nelson, one of the frustrating things for you is—is that you're mixing issues that arose well prior to this resentencing . . . [b]ut more importantly, there's no showing that it would

6

have materially—even if it had been ineffective assistance of counsel, that it would have materially impacted the decision [made two hearings ago] of the Court.

This particular case really comes down to a legal issue. Do those—one of those three offenses that constitutes the persistent offender status—do any one of those washout. Were you, in effect, crime free for a period of ten years? And the Court [at the April 2022 initial hearing] ruled against you on that issue. . . .

[Appointed counsel] argued vigorously to the Court on those issues. I ruled against you on those issues . . . . But I cannot find any evidence in this case which would substantiate your claim that on the resentencing that [appointed counsel]'s representation was ineffective.

RP (June 7, 2022) at 127-29. After the court's ruling on the conflict issue, Mr. Nelson's appointed counsel confirmed to the court his belief he did not have a conflict of interest and told the court he did not recall ever telling Mr. Nelson he had such a conflict.

The trial court then signed the order amending judgment and sentence and the separate written findings and conclusions that supported the order. Relative to this appeal, the court's conclusions of law state:

11. Mr. Nelson's 1991 conviction for First Degree Promoting Prostitution and subsequent period of incarceration, interrupted the ten-year washout period of RCW 9.94A.525 as it related to the March 1988 convictions for Attempted First Degree Robbery and Second Degree Kidnapping.

12. May 11, 1998, the date of Mr. Nelson's release from custody for his 1991 conviction for First Degree Promoting Prostitution, marks the first day of the ten-year calculation under RCW 9.94A.525 to ascertain whether either of Mr. Nelson's prior Class B most serious offenses would wash out for offender score purposes.

7

13.  Mr. Nelson's conviction for Obstructing a Law Enforcement Officer, entered on April 18, 2008, in cause number 08-1-00107-6 interrupted the ten-year period under RCW 9.94A.525(2)(b) during which he was required to remain in the community without committing a crime which subsequently resulted in a conviction.

14.  The Court concludes that plea of guilty in 08-1-00107-6 is valid on its face and that Mr. Nelson's plea was valid under *State v. Holsworth*, 93 Wn.2d 148, 607 P.2d 845 (1980).

15.  Notwithstanding the deletion of *Blake*-affected convictions for possession of a controlled substance, Mr. Nelson's Class B most serious offenses do not wash out, so his persistent offender sentence of life without the possibility of parole under RCW 9.94A.570 is upheld on resentencing.

Clerk's Papers (CP) at 7-8.

Mr. Nelson timely appealed.

ANALYSIS

INEFFECTIVE ASSISTANCE OF COUNSEL

Mr. Nelson first contends he received ineffective assistance of counsel at the resentencing hearing.  He argues his trial counsel had a conflict of interest that effectively denied him his constitutional right to counsel.[5]  He argues that his counsel took an adverse position against him on the record and ceased to advocate actively on his behalf by telling the court he had no conflict of interest.  We disagree that anything appointed

---

[5] The right to counsel under the Sixth Amendment to the United States Constitution, includes the right to conflict-free counsel.  *State v. Davis*, 141 Wn.2d 798, 860, 10 P.3d 977 (2000).

8

counsel said at the June 2022 hearing impacted the outcome of Mr. Nelson's resentencing.

The Sixth Amendment to the United States Constitution guarantees that in all criminal prosecutions, the accused shall enjoy the right to have the assistance of counsel for his defense. *State v. Davis*, 141 Wn.2d 798, 860, 10 P.3d 977 (2000). "The Sixth Amendment right to counsel is assured in state courts by the due process clause of the Fourteenth Amendment. The constitutional right to counsel includes the right to assistance of counsel free from conflicts of interest." *Id.* (footnote omitted).

A conflict of interest is not a per se violation of the right to counsel. *In re Pers. Restraint of Gomez*, 180 Wn.2d 337, 348, 325 P.3d 142 (2014). To show a violation of the Sixth Amendment right, a defendant must show (a) defense counsel "actively represented conflicting interests" and (b) the "actual conflict of interest adversely affected" the performance. *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S. Ct. 1708, 64 L. Ed. 2d 333 (1980).

Here, the purported conflict of interest occurred during the third hearing in June 2022. Two hearings before this, at the April 2022 hearing, appointed counsel vigorously argued Mr. Nelson's case yet the trial court determined that the newly discovered April 18, 2008 obstructing a law enforcement officer conviction prevented Mr. Nelson's second strike from washing out. The April hearing was continued to May

9

to give the State an opportunity to prepare findings and conclusions, and the May hearing was continued to June to give Mr. Nelson an opportunity to review the State's proposed findings and conclusions. Nothing appointed counsel said at the June 2022 hearing impacted the court's April 2022 determination nor did it impact the findings and conclusions signed by the court in June 2022. We conclude that the purported June 2022 conflict of interest did not adversely affect the findings and conclusions on review, or for that matter, Mr. Nelson's amended sentence, and for this reason, we deny his first claim.

MOTION FOR NEWLY APPOINTED COUNSEL

Mr. Nelson next contends the trial court abused its discretion when it denied his motion for newly appointed counsel without adequately inquiring into the nature of his trial counsel's alleged conflict of interest. We disagree.

"We generally review trial court decisions relating to attorney/client differences for abuse of discretion." *State v. Cross*, 156 Wn.2d 580, 607, 132 P.3d 80 (2006), *abrogated on other grounds by State v. Gregory*, 192 Wn.2d 1, 427 P.3d 621 (2018).

A defendant does not have an absolute, Sixth Amendment right to choose any particular advocate. *State v. DeWeese*, 117 Wn.2d 369, 375-76, 816 P.2d 1 (1991). Whether an indigent defendant's dissatisfaction with his court-appointed counsel is meritorious and justifies the appointment of new counsel is a matter within the discretion of the trial court. *Id*. at 376.

A criminal defendant who is dissatisfied with appointed counsel must show good cause to warrant substitution of counsel, such as a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the attorney and the defendant. *State v. Stenson*, 132 Wn.2d 668, 734, 940 P.2d 1239 (1997) (citing *Smith v. Lockhart*, 923 F.2d 1314, 1320 (8th Cir. 1991)). When reviewing a trial court's refusal to appoint new counsel, we consider: (1) the extent of the conflict, (2) the adequacy of the trial court's inquiry, and (3) the timeliness of the motion. *Cross*, 156 Wn.2d at 607.

First, if appointed counsel had a conflict, it was de minimis. His statement to the trial court was *after* it had denied Mr. Nelson's conflict arguments and had nothing to do with the order or the supporting findings and conclusions entered that day.

Second, the trial court conducted an adequate inquiry into the purported conflict of interest. The court listened thoroughly to Mr. Nelson's allegations and engaged in a lengthy colloquy with him.

Third, the request for newly appointed counsel was not timely. Mr. Nelson made the request in pleadings first addressed at the second hearing, one month after the trial court ruled in the State's favor on the resentencing issue. Because these three factors weigh against Mr. Nelson, we conclude that the trial court did not abuse its discretion when it denied his motion for new counsel.

STATEMENT OF ADDITIONAL GROUNDS FOR REVIEW

RAP 10.10 permits a defendant to file a pro se statement of additional grounds for review (SAG) if the defendant believes his appellate counsel has not adequately addressed certain matters. Mr. Nelson raises four issues.

SAG ISSUE I: FAILURE TO OBTAIN LEAVE UNDER RAP 7.2(e) CLAIM

Mr. Nelson, citing RAP 7.2(e), argues the trial court lacked authority to enter the order amending his sentence because, at the time, he had matters on appeal that might be impacted. We decline to review this claim of error.

Mr. Nelson did not raise this issue to the trial court. We generally decline to review issues raised for the first time on appeal. RAP 2.5(a). One purpose for requiring issues to be first raised to the trial court is to give it the opportunity to correct errors before they occur. *See State v. Scott*, 110 Wn.2d 682, 685-86, 757 P.2d 492 (1988). Had Mr. Nelson timely raised the present issue, the trial court could have complied with the procedure of RAP 7.2(e) and obtained permission to enter the subject order. For this reason, we decline to review this issue.

SAG ISSUE II: COLLATERAL ESTOPPEL CLAIM

Mr. Nelson argues he was entitled to be resentenced within a standard range after the court vacated his two unlawful possession convictions. He argues that collateral

estoppel prevented the parties from relitigating his unlawful possession convictions. We disagree.

For collateral estoppel to apply, the party seeking it must show (1) the issue in the earlier proceeding is identical to the issue in the later proceeding, (2) the earlier proceeding ended with a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party, or in privity with a party, to the earlier proceeding, and (4) applying collateral estoppel would not be an injustice. *Schibel v. Eymann*, 189 Wn.2d 93, 99, 399 P.3d 1129 (2017).

Mr. Nelson argues collateral estoppel prevented the State from relitigating his unlawful possession offenses. But here, the State did not relitigate those offenses. The trial court vacated those convictions and relied on another conviction to interrupt the washout period associated with his second strike offense.

SAG ISSUE III: EX POST FACTO VIOLATION CLAIM

Mr. Nelson argues the trial court violated the ex post facto clause[6] by sentencing him under the version of the first degree promoting prostitution statute in effect at

---

[6] The ex post facto clauses of the United States Constitution and the Washington Constitution prohibit enactment of any law that imposes punishment for an act that was not punishable when committed, or that increases the quantum of punishment after the offense was committed. *State v. Schmidt*, 143 Wn.2d 658, 672-73, 23 P.3d 462 (2001) (citing U.S. CONST. art. I, § 10, cl. 1; WASH. CONST. art. I, § 23).

13

sentencing rather than the version in effect when he committed the crime. We disagree.

Mr. Nelson committed the crime of first degree promoting prostitution in 1991, and was sentenced for the crime in 1991. Accordingly, the trial court sentenced Mr. Nelson under the 1975 version of RCW 9A.88.070, for promoting prostitution in the first degree, which was in effect in 1991. Mr. Nelson's argument stems from his belief that first degree promoting prostitution is now classified as a class A felony. It is not. First degree promoting prostitution is, and has always been, classified as a class B felony. *Compare* RCW 9A.88.070(2) (1975) *with* RCW 9A.88.070(2) (2012). But this does not lead to the conclusion that this particular offense is not a most serious offense. Under RCW 9.94A.030(32)(m), promoting prostitution in the first degree is a most serious offense. We conclude that the trial court did not violate the ex post facto clause.

SAG ISSUE IV: WASHOUT ERROR CLAIM

Mr. Nelson argues the trial court erred by determining that his 2008 obstructing a law enforcement officer conviction, a gross misdemeanor, interrupted the washout period associated with his 1991 first degree promoting prostitution conviction. He argues that under the former washout statute in effect in 1991, only a felony conviction could interrupt the washout period for a class B felony. We disagree.

RCW 9.94A.525(2)(b) directs when courts must include a defendant's prior felony convictions in a defendant's offender score. Offenses not included in the offender score

14

under the statute are said to have washed out.  *State v. Schwartz*, 194 Wn.2d 432, 439,

450 P.3d 141 (2019); *see also State v. Keller*, 143 Wn.2d 267, 284, 19 P.3d 1030 (2001).

Our Supreme Court has repeatedly held that sentencing courts must look to the

statute in effect at the time the defendant committed the current offenses when

determining the defendant's sentence.  *State v. Varga*, 151 Wn.2d 179, 191, 86 P.3d 139

(2004); *State v. Delgado*, 148 Wn.2d 723, 726, 63 P.3d 792 (2003).  Here, Mr. Nelson's

current offenses were attempted first degree robbery and attempt to elude a pursuing

police vehicle.  He committed those offenses in 2014.

In 2014, the version of the washout statute in effect, provided in relevant part:

> Class B prior felony convictions . . . shall not be included in the offender
> score, if since the last date of release from confinement . . . pursuant to a
> felony conviction . . . the offender had spent ten consecutive years in the
> community without committing *any crime* that subsequently results in a
> conviction.

RCW 9.94A.525(2)(b) (emphasis added).  May 11, 1998, the date of Mr. Nelson's release

from custody for his 1991 conviction for first degree promoting prostitution, marked the

first day of his 10-year calculation under RCW 9.94A.525(2)(b).  Here, Mr. Nelson

obstructed a law enforcement officer before May 11, 2008, the 10-year washout period.

Thus, the 2008 misdemeanor conviction interrupted the washout period associated with

his 1991 first degree promoting prostitution conviction.  The trial court did not err.

15

No. 38985-5-III
*State v. Nelson*


Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, C.J.

WE CONCUR:

_____          _____
Pennell, J.                                               Staab, J.

16