77 P.3d 368 (2003)
STATE of Washington, Respondent,
v.
Arthur Porter CARMEN, Appellant.
No. 50774-5-I.
Court of Appeals of Washington, Division 1.
October 6, 2003.
*369 Thomas Kummerow, Seattle, WA, for Appellant.
Deric Martin, Seattle, WA, for Respondent.
KENNEDY, J.
RCW 26.50.110(5) provides that violation of a protection order issued under chapter 26.50, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or violation of a valid foreign protection order as defined by RCW 26.50.020, which otherwise would be a gross misdemeanor, is a Class C felony if the offender has at least two previous convictions for violating the provisions of an order issued under one of those listed chapters, or of a valid foreign protection order as so defined. At Arthur Carmen's jury trial for felony violation of a no-contact order, he argued that the statutory authority for issuance of the orders that he had twice previously been convicted of violating is an essential element of the charged crime, and requested a "to convict" jury instruction that would have required the State to prove beyond a reasonable doubt that he had at least two previous convictions for violating an order issued under chapter 26.50, 10.99, 26.09, 26.10, 26.26 or 74.34 RCW, or a valid foreign protection order.
The trial court rejected the proposed instruction, and instead instructed the jury that in order to convict it must find that Carmen had "twice previously been convicted for violating the provisions of a no contact order[.]" The court ruled that the question of whether Carmen had twice previously been so convicted was a question of fact for the jury, but that the statutory authority for issuance of the previous orders, and therefore the validity of the previous convictions as predicate offenses, was a question of law for the court.
Accordingly, the State was only required to prove the two prior convictions, which it accomplished by means of presenting certified copies of the judgment and sentence for each of them. Neither of those documents stated the statutory authority for issuance of the order that Carmen had been convicted of violating.
At the close of the State's case, Carmen asked the court to dismiss the felony charge for lack of sufficient evidence to prove that he violated orders that had been issued under one of the listed chapters, and to submit the matter to the jury as a misdemeanor. The court denied that motion. The jury convicted Carmen of felony violation of a no-contact order.
At sentencing, the trial court reviewed the court files from the Federal Way Municipal Court pertaining to the two previous convictions, and concluded that they had been based on violations of domestic violence no-contact orders issued under Chapter 10.99 RCW. Accordingly, the court entered judgment for the felony conviction and imposed a standard range sentence. This appeal followed. We affirm.

I
RCW 26.50.110 provides in pertinent part:
(1) Whenever an order is granted under this chapter, chapter 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or there is a valid foreign protection order as defined in RCW 26.52.020, and the respondent or person to be restrained knows of the order, a violation of the restraint provisions, or of a provision excluding the person from a residence, workplace, school, or day care, or of a provision prohibiting a person from knowingly coming within, or knowingly remaining within, a specified distance of a location, or of a provision of a foreign *370 protection order specifically indicating that a violation will be a crime, for which an arrest is required under RCW 10.31.100 (2)(a) or (b), is a gross misdemeanor except as provided in subsections (4) and (5) of this section....
....
(5) A violation of a court order issued under this chapter, chapter 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or of a valid foreign protection order as defined in RCW 26.52.020, is a class C felony if the offender has at least two previous convictions for violating the provisions of an order issued under this chapter, chapter 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or a valid foreign protection order as defined in RCW 26.52.020. The previous convictions may involve the same victim or other victims specifically protected by the orders the offender violated.
Defense counsel requested the following "to convict" instruction:
To convict the defendant of the crime of felony violation of a protection order, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about November 7, 2001 the defendant knowingly had contact with [the victim];
(2) That such contact violated the restraint provisions of a protection order;
(3) That the defendant knew of the existence of that protection order;
(4) That the order was issued under RCW chapter 10.99, 26.09, 26.10, 26.26, 26.50, or 74.34, or a[sic] was a valid foreign protection order;
(5) That the defendant has at least two prior convictions for violating an order granted under RCW chapter 10.99, 26.09, 26.10, 26.26, 26.50, or 74.34, or a valid foreign protection order; and;
(6) That the acts occurred in the State of Washington.
If you find from the evidence that each of these elements has been proven beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any of these elements, then it will be your duty to return a verdict of not guilty.
Clerk's Papers at 60.
The trial court ruled:
With respect to whether or not they are pursuant to in the statutes, that is, that they meet the requirements of the no-contact ordersthe types of the no-contact orders that are required to be violated in order to get us to a felony, I have indicated in chambers in our instructions conference, and I will say now and just note it for purposes of exceptions as well, that in my view it is the court's role to decide whether or not the violations, should the jury find the violationsthe prior violationsthen it would be the court's responsibility to decide whether or not the orders that were violated were in fact pursuant to the statutes in question.
Report of Proceedings 4/18/02 at 60-61.
Accordingly, the trial court instructed the jury as follows:
A person commits the crime of felony violation of a no-contact order when:
 he or she willfully has contact with another when such contact was prohibited by a no-contact order;
 the person knew of the existence of the no-contact order; and
 the person had twice previously been convicted for violating the provisions of a no-contact order.
Clerk's Papers at 21, Instruction No. 7.
To convict the defendant of the crime of felony violation of a no-contact order, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That on or about November 7, 2001 the defendant willfully had contact with [the victim];
(2) That such contact was prohibited by a no-contact order;
(3) That the defendant knew of the existence of the no-contact order;
(4) That the defendant had twice previously been convicted for violating the provisions of a no contact order; and
*371 (5) That the acts occurred in [the] State of Washington.
If you find from the evidence that each of these elements has been proven beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any of these elements, then it will be your duty to return a verdict of not guilty.
Clerk's Papers at 22, Instruction No. 8.

II
Relying on Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), and Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), Carmen contends that the trial court violated his right to due process by failing to require the jury to find an essential element of the charged crime beyond a reasonable doubt, specifically, that the two previous convictions were for violations of orders issued under one or more of the specific statutes listed in RCW 26.50.110(5).
Ring involved charges of premeditated murder and felony murder, arising from the shooting and robbery of an armored car driver. Clear evidence submitted at trial connected Ring to the proceeds from the robbery, but there was no evidence that he was at the scene of the crime or participated in the killing. Ring, 536 U.S. at 591-92, 122 S.Ct. 2428. A jury found Ring guilty of felony murder, but deadlocked on the premeditated murder count. Id. at 591, 122 S.Ct. 2428.
Ring could be sentenced to death for felony murder under Arizona law only if he were the actual killer or a "major participant" in the armed robbery. Ring, 536 U.S. at 594, 122 S.Ct. 2428. At the separate sentencing hearing before a judge, a cohort who had not testified at the jury trial testified that Ring planned and led the robbery, shot the driver, and upbraided his cohorts for forgetting to congratulate him on his shot. Id. at 593-94, 122 S.Ct. 2428. Based on this testimony, the judge found that Ring had committed the murder and found aggravating circumstances, including that Ring committed the offense "in an especially heinous, cruel or depraved manner," and sentenced him to death. Id. at 594-95, 122 S.Ct. 2428.
Because the maximum punishment Ring could have received based on the jury's verdict was life in prison, Ring, 536 U.S. at 597, 122 S.Ct. 2428, the United States Supreme Court reversed the Arizona Supreme Court's judgment affirming the sentence. The high court held that the Sixth Amendment requires that the determination of aggravating factors necessary for imposing the death penalty under Arizona law must be found by a jury, rather than by a sentencing judge sitting without a jury. Id. at 609, 122 S.Ct. 2428.
In Apprendi, following the defendant's guilty plea to offenses with a statutory maximum sentence of 10 years, the sentencing court held an evidentiary hearing and found by a preponderance of the evidence that the defendant's crime was motivated by racial bias in violation of the New Jersey "hate crime" law, for which a longer sentence was authorized. The court sentenced the defendant to 12 years. Apprendi, 530 U.S. at 469-71, 120 S.Ct. 2348. In its opinion reversing the sentence, the Supreme Court stated, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490, 120 S.Ct. 2348. The court continued,
Whereas recidivism "does not relate to the commission of the offense" itself ... New Jersey's biased purpose inquiry goes precisely to what happened in the "commission of the offense." Moreover, there is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof.
Apprendi, 530 U.S. at 497, 120 S.Ct. 2348, quoting in part Almendarez-Torres v. United States, 523 U.S. 224, 230, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998).
*372 When considering a case actually involving prior convictions, the Supreme Court stated, that "prior commission of a serious crime ... is as typical a sentencing factor as one might imagine." Almendarez-Torres, 523 U.S. at 230, 118 S.Ct. 1219. Almendarez-Torres pleaded guilty to returning to the United States after being deported, admitting that his deportation had been pursuant to three earlier convictions for aggravated felonies. Id. at 227, 118 S.Ct. 1219. The indictment did not mention the prior felonies. Id. The charging statute provided a maximum sentence of two years, but increased the maximum to 20 years if the deportation was subsequent to a conviction for an aggravated felony. Id. at 226, 118 S.Ct. 1219. Following sentencing, Almendarez-Torres appealed, arguing that his prior aggravated felonies were an essential element of the crime. Id. The high court disagreed, holding that the pertinent subsection of the statute "simply authorizes a court to increase the sentence for a recidivist." Id.
Unlike the circumstances in Ring and Apprendi, the "fact" that elevated Carmen's crime to a felony, two previous convictions for violation of a no-contact order, was found by the jury, beyond a reasonable doubt. In addition, the aggravating factor was the two previous convictions, which fall under the exception in Apprendi. Neither Ring nor Apprendi applies to the case at bar. See State v. Oster, 147 Wash.2d 141, 145-46, 52 P.3d 26 (2002) (Apprendi does not apply where the fact of the prior convictions for violation of no-contact orders was found by the jury beyond a reasonable doubt).[1]
Carmen's jury considered the judgment and sentence for each of the prior convictions and found beyond a reasonable doubt that Carmen had twice previously been convicted for violating a no-contact order. Based on this finding, the charge could properly be sentenced as a felony, provided that the orders underlying the prior convictions were issued pursuant to one or more of the pertinent statutes. See RCW 26.50.110(1), (5). The only question determined by the trial court was whether the convictions relied upon by the jury actually were based on violations of protection orders issued under one of the statutes listed in RCW 26.50.110(5). This was properly a question of law for the court.[2]
Our only criticism of the procedure followed in this case is that neither the parties nor the trial court appeared to recognize *373 that the requirement contained in RCW 26.50.110(5) that the prior convictions be for violations of no-contact orders issued under one of the listed statutes, or for violation of a "valid foreign protection order," relates to the admissibility of the State's proof of the prior convictions, rather than to an essential element of the felony crime. Carmen could have, but did not, object to the admission of the certified copy of the judgment and sentence establishing each of his previous convictions, in that neither document stated on its face the statutory basis for the issuance of the order he was convicted of violating. The admissibility of the documents turned on whether the convictions so established qualified as predicate convictions for purposes of RCW 26.50.110(5). They so qualified if and only if the no-contact orders Carmen had twice previously been convicted of violating were issued under chapter 26.50, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or qualified as valid foreign protection orders as defined in RCW 26.52.020. Put another way, RCW 26.50.110(5) raises an evidentiary barrier to the admission of evidence of the two prior convictions in order to prove the felony offense unless the prior convictions qualified as predicate convictions as defined in the statute. The very relevancy of the prior convictions depended upon whether they qualified as predicate convictions under the statute. If they had not so qualified, the jury never should have been permitted to consider them.
Of course, here, there was no such objection to the admission of the documents, and the trial court took care of the missing evidentiary link by examining the files of the Federal Way Municipal Court to establish, prior to sentencing, that the underlying orders had been issued under chapter 10.99 RCW. Thus, Carmen's contention that his conviction must be reversed and the felony charge dismissed on the basis of lack of sufficient evidence to prove the validity of the predicate convictions fails. Still, the sentencing stage is not the ideal time for determination of admissibility of evidence that the jury has already viewed and upon which it based its guilty verdict.
Washington Pattern Jury Instructions: Criminal, 11 Washington Practice (WPIC) § 36.50 recommends that the jury be instructed that: "A person commits the crime of violation of a domestic violence no-contact order when he or she willfully has contact with another when such contact was prohibited by a no-contact order and the person knew of the existence of the no-contact order." The Comment to this section states that "it is assumed that the court, rather than the jury, will determine the issue of whether the order or orders in question were issued pursuant to [one of the statutes specified in RCW 26.50.110]". This assumption is correct, but why this is so and when the trial court should make that determination is beyond the scope of the WPIC.
The evidentiary nature of the statutory requirement becomes clear upon consideration of similar statutory schemes requiring proof of conviction of one or more previous crimes as an element of the current charge. In only two kinds of cases has our Supreme Court held that, where challenged, the State must prove the constitutional validity of the predicate conviction(s) beyond a reasonable doubt: (1) a proceeding to establish a status of habitual criminal or habitual traffic offender, and (2) a proceeding to establish the crime of felon in possession of a firearm. See State v. Ammons, 105 Wash.2d 175, 187, 713 P.2d 719 (1986), citing State v. Chervenell, 99 Wash.2d 309, 312, 662 P.2d 836 (1983) (habitual offender); State v. Holsworth, 93 Wash.2d 148, 157, 607 P.2d 845 (1980) (habitual offender); State v. Ponce, 93 Wash.2d 533, 611 P.2d 407 (1980) (habitual offender); State v. Swindell, 93 Wash.2d 192, 607 P.2d 852 (1980) (felon in possession); and State v. Gore, 101 Wash.2d 481, 681 P.2d 227, 39 A.L.R.4th 975 (1984)
(felon in possession).
An examination of these and other cases involving habitual offenders and felons in possession of firearms reveals that what is at issue is the admissibility into evidence of the fact of the predicate conviction, because evidence of a constitutionally invalid conviction may not properly be admitted for the jury's consideration. And it is the trial court, not the jury, which decides the constitutional validity of the predicate conviction, at a hearing *374 held outside the presence of the jury, as in other situations where the court must determine the admissibility of evidence that has been challenged.
Thus, in State v. Luther, 31 Wash.App. 589, 590-92, 643 P.2d 914 (1982), when the defendant challenged the constitutional validity of his predicate conviction in a prosecution under the Uniform Firearms Act, the trial court held a hearing and entered findings of fact and conclusions of law adverse to the defendant's constitutional claim, which the appellate court subsequently reviewed and affirmed.
Although the habitual offender statute is not applicable to felonies committed after July 1, 1984, see RCW 9.92.900, the case law construing the statute is also helpful to the current analysis. As is true under RCW 26.50.110(5), under the habitual offender statute the "status" of being an habitual offender did not constitute a separate crime but rather was applied to enhance the punishment for the latest conviction. See Smith v. Rhay, 419 F.2d 160, 164 (9th Cir.1969) (the status of being habitual offender does not constitute a separate crime, but instead is applied to enhance punishment for latest offense); see also State v. Davis, 116 Wash.App. 81, 93-94, 64 P.3d 661 (2003) (felony violation of a no-contact order is not a separate, distinct crime; rather, RCW 26.50.110(1) defines a misdemeanor crime and subsections (4) and (5) list the factors that elevate what would otherwise be a misdemeanor to a felony).
Under the habitual offender statute, if the offender were to be found guilty of his or her third felony, the State could, before sentencing of the offender for the third offense, file a supplemental information charging the offender with being an habitual offender. Smith v. Rhay, 419 F.2d at 164. The offender had a right to a jury trial in the supplemental proceeding. State v. Bryant, 73 Wash.2d 168, 173, 437 P.2d 398 (1968). The State was required to prove the previous convictions beyond a reasonable doubt, and if the offender challenged the constitutional validity of the prior convictions, the State had the burden of proving beyond a reasonable doubt that the convictions were constitutionally valid. Holsworth, 93 Wash.2d at 161, 607 P.2d 845.
In State v. Thornton, 24 Wash.App. 881, 604 P.2d 1004 (1979), the offender did challenge the constitutional validity of the previous convictions. He sought jury instructions that would have told the jury (1) that the State was required to prove the existence of two previous "valid" felony convictions; (2) that a conviction is valid only if the defendant was represented by counsel in the prior proceeding; (3) that an involuntary plea of guilty is void; and (4) that a plea of guilty entered without the defendant being advised of the maximum sentence is void. Thornton, 24 Wash.App. at 885-87, 604 P.2d 1004. The trial court rejected these proposed instructions, and treated the offender's constitutional challenges to the validity of his previous convictions as questions of law, which it resolved against him for reasons that are not germane to the present discussion. The appellate court affirmed, holding that the sole function of the jury in an habitual criminal proceeding is to determine whether the defendant has been convicted of two prior felonies, and that the constitutional validity of the prior convictions "is a question of law for the court, not a question of fact for the jury." Id. at 887, 604 P.2d 1004. The court went on to explain why this is so: Once the offender challenges the constitutional validity of the previous convictions, the trial court must determine the admissibility of the evidence of the previous convictions. If the constitutional challenge to the validity of the convictions is well taken, the trial court cannot properly admit evidence of the convictions for the jury's consideration. Id.
Clearly, the Legislature adopted RCW 26.50.110(5) because it believed that an offender who has twice previously been convicted of misdemeanor violations of no-contact orders, and who has yet again violated such an order, is both more dangerous and more culpable than is a first or second offender, and that a more stringent penalty than is permitted for a misdemeanor offense is necessary to deter the repeat offender from further acts of domestic violence. Similar intent motivated the habitual offender statute. Juries in both kinds of proceedings must find the existence of the predicate convictions *375 beyond a reasonable doubt, and in both kinds of proceedings the defendant may challenge the validity of the underlying convictions on constitutional grounds in the case of habitual offenders, and on statutory grounds (and presumably on constitutional grounds as well) in the case of recidivist violators of protection orders. But in both instances, any challenge to the validity of the predicate convictions raises evidentiary issues that must be addressed to and resolved by the trial court, not by the jury.
Thus, the trial court in the instant matter did not err by rejecting Carmen's proposed "to convict" instruction on the ground that the court, not the jury, must determine the validity of the predicate convictions for purposes of RCW 26.50.110(5). That ruling was correct. Because Carmen does not challenge the timing of the trial court's examination of the municipal court records to determine that the predicate convictions were based on violations of no-contact orders issued under chapter 10.99 RCW, and because he waived any objection by failing to object to the admission into evidence of the certified copies of his prior convictions on grounds of their statutory validity, and because the trial court's post-trial examination of the records cured the evidentiary gap in any event, we affirm Carmen's conviction. We suggest, however, that in future cases, where the judgment and sentence for one or more of the predicate convictions does not reflect the statutory authority for issuance of the no-contact order that was violated, the State be prepared to prove the underlying statutory authority to the trial court before requesting admission of the evidence of the conviction(s). Such may prevent unnecessary trials if that evidence is not in fact available in the records of the courts of conviction, and will assist busy trial courts in the efficient processing of such evidentiary objections as may arise, and in determining whether to submit the matter to the jury as a misdemeanor or a felony.
Affirmed.
WE CONCUR: ELLINGTON and APPELWICK, JJ.
NOTES
[1] Carmen cites Oster for the proposition that the trial court's failure to utilize a special verdict form to ascertain whether the jury found beyond a reasonable doubt that he had twice previously been convicted of violating a no-contact order requires reversal and a new trial. We decline to reach this issue. First. Carmen assigns no error to the trial court's inclusion of the previous convictions in the "to convict" instruction rather than in a special verdict form. Second, he proposed a "to convict" instruction that contained the same alleged error. Third, he cites to no place in the record where he requested the trial court to utilize a special verdict form. And finally, contrary to his assertion, Oster does not stand for the proposition that the trial court "must" utilize a special verdict form. Instead, the court called that procedure the "better practice" in order to mitigate the prejudice arising from the evidence of prior convictions. Oster, 147 Wash.2d at 147-48, 52 P.3d 26. Here, the trial court mitigated the prejudicial effect of the prior convictions by instructing the jury not to consider the evidence of the prior convictions for the purpose of inferring guilt with respect to the current charge, but only for the purpose of determining whether the State met its burden of proof with respect to the elements of the charged crime. Carmen makes no argument that this was insufficient.
[2] Carmen's proposed "to convict" jury instruction helps to illustrate the impropriety of asking the jury to decide questions of law. Under his proposed instruction, if a conviction arose from violation of a protection order from another jurisdiction, the jury would be called upon to determine whether it was based on a "valid foreign protection order." Defendant's Proposed Instruction 8, Clerk's Papers at 60. RCW 26.50.110 provides that a "valid foreign protection order" is one that qualifies as such under RCW 26.52.020. Chapter 26.52 RCW contains Washington's Foreign Protection Order Full Faith and Credit Act. RCW 26.52.020 provides that a foreign protection order is valid "if the issuing court had jurisdiction over the parties and matter under the law of the state, territory, possession, tribe, or United States military tribunal." That section also provides that a person under restraint must have been given reasonable notice and an opportunity to be heard, either before the order was issued, or in the case of an ex parte order, immediately thereafter, "consistent with due process." These are clearly questions for the court and not the jury.