[No. 59573-3-I.   Division One.   June 2, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. CYNTHIA
CRISAUNDRA BOSS, *Appellant*.

*Thomas M. Kummerow* (of *Washington Appellate Project*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney,* and *Terence R. Carlstrom, Deputy,* for respondent.

¶1 DWYER, A.C.J. — Cynthia Boss appeals from the judgment entered on a jury's verdict finding her guilty of custodial interference in the first degree. She contends that the trial court erred by omitting two essential elements of the offense from the "to convict" instruction given to the jury: (1) the validity of a court order giving Child Protective Services (CPS) custody of her daughter, O.J.B.-P., and (2) her knowledge of the custody order's validity. We hold that the trial court properly determined the custody order's validity as part of its "gate-keeping" function, rather than submitting the question of the order's validity to the jury as an essential element of the offense. We also hold that the offense of custodial interference does not contain as an element the defendant's knowledge of a custody order's validity. Accordingly, we conclude that the trial court did not err in either regard.

¶2 The trial court also instructed the jury that the State had established, as a matter of law, CPS's "lawful right to physical custody" of O.J.B.-P. Whether the State proved, as a factual matter, that CPS had a "lawful right to physical custody" of O.J.B.-P. was properly a matter for the jury. Accordingly, the trial court erred by so instructing the jury. However, because the record affirmatively demonstrates that no prejudice to Boss could have resulted from this erroneous instruction, the error was harmless.

¶3 Finally, Boss argues that her knowledge of CPS's "right to physical custody" of O.J.B.-P. is an implied element of the offense, and that the trial court erred by not so instructing the jury. This element could be proved by evidence of her knowledge of the existence of the custody order, as contrasted with evidence of her knowledge of the custody order's legal validity. We conclude that she is correct in this

contention but that, in this case, she cannot demonstrate actual prejudice from the claimed error and, thus, is not entitled to appellate relief. Accordingly, we affirm.

I

¶4 Prior to O.J.B.-P.'s birth, CPS had contact with Boss regarding her other children. Upon learning of O.J.B.-P.'s birth, CPS filed a dependency petition in juvenile court. On May 11, 2006, after determining that a risk of imminent harm to O.J.B.-P. existed, the juvenile court issued an order granting the Department of Social and Health Services (DSHS) temporary custody of O.J.B.-P. That same day, CPS representatives went to Boss's last known address to obtain physical custody of O.J.B.-P., but the child could not be found. A shelter care hearing took place the following day. An order continuing CPS's legal supervision over O.J.B.-P. was issued at this hearing. That evening, CPS representatives served O.J.B.-P.'s father "with the court paper work" at Boss's last known address. A writ of habeas corpus was soon issued, granting CPS authority over O.J.B.-P.'s person.

¶5 On May 30, Boss read from the dependency petition while speaking with a DSHS employee over the telephone. During this conversation, Boss said that she was not going to make O.J.B.-P. available to the agency. On May 31, Boss was served with the writ of habeas corpus but refused to divulge O.J.B.-P.'s whereabouts and thus was taken into custody. In the course of a court hearing held later that day, Boss declined to provide any information to help CPS locate O.J.B.-P. While in court, Boss was served with copies of the May 11 custody order, the shelter care order, and the writ of habeas corpus. At a court hearing the next day, Boss told the court that she could retrieve O.J.B.-P. if she were released. Boss was released from custody later that day. Boss appeared at a June 2 hearing but did not bring O.J.B.-P. with her or otherwise make her available to CPS. Another hearing was subsequently scheduled for June 8, but Boss did not appear for it. Later, CPS representatives

learned that O.J.B.-P. had been found in Houston, Texas. A diaper bag accompanying O.J.B.-P. was also discovered; it contained numerous items with Boss's name on them, including Amtrak tickets.

¶6 Boss was charged with custodial interference in the first degree. At trial, numerous court orders were admitted into evidence, including the May 11 custody order. Later, the prosecutor asked the trial court to take judicial notice of the custody order and the shelter care order for the purpose of instructing the jury that CPS had a lawful right to the physical custody of O.J.B.-P., as of the date the custody order was entered.[1] The trial court ruled that it had the authority to determine whether the orders had been lawfully entered. It then concluded that the custody order had been lawfully entered. The trial court instructed the jury that DSHS, CPS, and the State of Washington had a "lawful right to physical custody" of O.J.B.-P., an element of custodial interference, as of the date the custody order was entered. The jury convicted Boss as charged. Boss appeals.

## II

¶7 Boss first contends that the trial court erred by omitting from the "to convict" instruction given to the jury the essential element of whether the court order granting CPS custody of O.J.B.-P. was valid.

¶8 We review alleged errors of law in jury instructions de novo. *State v. Barnes*, 153 Wn.2d 378, 382, 103 P.3d 1219 (2005).

¶9 The offense of custodial interference is directed at relatives who take a child from a parent or from an entity that has the "lawful right to physical custody" of the child:

A relative of a child under the age of eighteen . . . is guilty of custodial interference in the first degree if, with the intent to deny access to the child . . . by a parent, guardian, institution,

---

[1] The shelter care order was not entered into evidence due to the prejudicial nature of some of its contents.

agency, or other person having a *lawful right to physical custody* of such person, the relative takes, entices, retains, detains, or conceals the child . . . from a parent, guardian, institution, agency, or other person having a *lawful right to physical custody* of such person and:

(a) Intends to hold the child . . . permanently or for a protracted period.

RCW 9A.40.060(1) (emphasis added). Accordingly, in order for the jury to convict Boss of custodial interference in the first degree, the State had to prove that a person or entity other than Boss had a "lawful right to physical custody" of O.J.B.-P. RCW 9A.40.060(1).

¶10 To prove this fact, the State relied on the May 11 court order giving CPS custody of O.J.B.-P. Boss contends that the jury should have been required to determine whether that order was validly entered, contending that the order's validity is a fact that must be proved to sustain a conviction and, thus, must be an element of the offense. Boss's argument is unpersuasive.

¶11 No prior reported decision discusses whether it is appropriate for the trial court to determine the validity of a court order, as a matter of law, in the context of a prosecution for custodial interference. However, several decisions arising from prosecutions for criminal violations of domestic violence no-contact orders have established that the validity of a court order is a question for the trial court to decide as a matter of law, rather than a factual question to be submitted to the jury. *See State v. Miller*, 156 Wn.2d 23, 123 P.3d 827 (2005); *State v. Gray*, 134 Wn. App. 547, 138 P.3d 1123 (2006); *State v. Carmen*, 118 Wn. App. 655, 77 P.3d 368 (2003). The reasoning of these cases applies with equal force to the custody order at issue herein.

¶12 In *Miller*, the defendant requested a "to convict" instruction that would have required the jury to determine the validity of the no-contact order he was charged with violating. The trial court declined to so instruct the jury, instead giving a "to convict" instruction that did not men-

tion the validity of the court order relied upon by the State but, rather, simply required the jury to determine whether a no-contact order existed. *Miller*, 156 Wn.2d at 26-27. The Supreme Court held that because the no-contact order's validity was not an element of the crime charged, the trial court had properly withheld from the jury the question of whether the order had been validly entered. *Miller*, 156 Wn.2d at 24, 31. In so holding, the court noted that issues relating to a court order's validity are "uniquely within the province of the court." *Miller*, 156 Wn.2d at 31.

¶13 Likewise, in *Carmen*, the trial court declined to submit to the jury, as an element of the charged offense, the question of whether the prior no-contact orders that provided the bases for the defendant's felony conviction had been properly issued pursuant to the applicable statutes. 118 Wn. App. at 656. Instead, the trial court decided, as a matter of law, whether the convictions for the no-contact order violations qualified as the required predicate convictions under RCW 26.50.110(5). *Carmen*, 118 Wn. App. at 659. Accordingly, the jury was instructed to determine only whether the prior convictions for violating the provisions of a no-contact order existed. *Carmen*, 118 Wn. App. at 656. We affirmed, holding that the trial court properly ruled that whether the no-contact orders that Carmen had been convicted of violating had been entered pursuant to an applicable statute was a question of law. *Carmen*, 118 Wn. App. at 663, 667-68. We explained that RCW 26.50.110(5)'s predicate conviction requirement relates to admissibility, rather than to an essential element of the felony offense; if Carmen's convictions had not been found to qualify as predicate convictions under RCW 26.50.110(5), the jury should not have been allowed to consider them. *Carmen*, 118 Wn. App. at 663-64.

¶14 In *Gray*, we again held that the statutory basis for a no-contact order's issuance is a question of law, not an essential element of the felony offense set forth in RCW 26.50.110(5). 134 Wn. App. at 549-50, 556. In so holding, we explicitly followed the reasoning of *Miller* and *Carmen*.

*Gray*, 134 Wn. App. at 556. We reiterated that whether a no-contact order had been properly issued pursuant to applicable statutes was a question of law related to the order's evidentiary admissibility, not a factual question for the jury. *Gray*, 134 Wn. App. at 549-50.

¶15 Boss does not address *Miller*, *Carmen*, or *Gray* in her briefing. Instead, she relies on *Cornwall v. State*, 915 P.2d 640 (Alaska Ct. App. 1996), an Alaska case interpreting that state's custodial interference statute, to support her contention that the offense of custodial interference includes the validity of a custody order as an element. In *Cornwall*, the State obtained emergency custody of a child, but soon thereafter, the parent took the child out of state. 915 P.2d at 642-43. In doing so, the parent relied on the advice of an attorney, who counseled that the State had not yet obtained lawful custody of the child. *Cornwall*, 915 P.2d at 643. The trial court ruled that the attorney could not testify concerning the legal advice he gave to Cornwall. *Cornwall*, 915 P.2d at 646-47. The appellate court disagreed, holding that the attorney's testimony should have been admitted because it was relevant to the offense's mens rea requirement. *Cornwall*, 915 P.2d at 648-49. However, *Cornwall* does not support Boss's contention that the offense of custodial interference includes a validity element. To the contrary, the court explained that if the attorney's testimony had been offered to convince the jury that the custody order was invalid, it would have been inadmissible. *Cornwall*, 915 P.2d at 647.

¶16 In this case, as in *Miller*, *Carmen*, and *Gray*, it was the trial court's role to determine whether the custody order was valid and, hence, relevant. The trial court gave Boss's counsel a number of opportunities to dispute the custody order's validity. The trial court ultimately ruled, however, that the order was lawfully entered. Because this ruling was a proper exercise of the trial court's "gate-keeping" function to determine the custody order's validity as a matter of law, the trial court did not err by declining to include the question of the order's validity as an element of the offense in the "to convict" instruction.

## III

¶17 In her briefing, Boss phrases the next issue she raises as being whether "Boss's knowledge of the lawfulness of the [custody] order [was an] element[ ] of the offense of child [sic] interference in the first degree." The trial court did not instruct the jury that it was. There was no error.

¶18 Boss again relies upon *Cornwall* in briefing this issue. In fact, the *Cornwall* court did conclude that the defendant's belief that no legal impediment prevented her from taking the child could serve to negate the Alaska statute's requirement that the defendant know that the defendant had no legal right to take or keep the child. *Cornwall*, 915 P.2d at 648-49. But neither *Cornwall* nor the statute it interprets have any bearing on RCW 9A.40.060. Nowhere in RCW 9A.40.060 does it state that the defendant is required to have knowledge of a custody order's validity in order to violate the statute's terms. The defendant's knowledge of the validity of a custody order is not an element of the offense of custodial interference in the first degree.

## IV

¶19 During oral argument in this matter, two additional issues of concern were identified. We note that, almost uniformly, we will not address issues that are not raised until oral argument. *State v. Newlun*, 142 Wn. App 730, 738 n.5, 176 P.3d 529 (2008). However, in this case, because of the importance of the issues raised and because of the need of trial courts for guidance on these issues, we will address these tardily-asserted contentions.

¶20 The first of these issues is whether the trial court improperly commented on the evidence in its instructions to the jury. The trial court issued the following "to convict" instruction:

To convict the defendant of the crime of custodial interference in the first degree, each of the following elements of the crime must be proved beyond a reasonable doubt:

(1) That the defendant is a relative of [O.J.B.-P.], a child under the age of eighteen;

(2) That on or about the period of time intervening between May 31, 2006 through August 22, 2006, the defendant, with the intent to deny access to [O.J.B.-P.] by an institution, agency or person having a lawful right to the physical custody of such person, took, enticed, retained, detained, or concealed [O.J.B.-P.] from an institution, agency or person having a lawful right to the physical custody of such person and intended to hold [O.J.B.-P.] permanently or for a protracted period; and

(3) That any of the acts occurred in the State of Washington.

Instruction 10. The trial court also instructed the jury that

[a]s of May 11, 2006, DSHS, Children's Protective Services and the State of Washington had lawful right to physical custody of [O.J.B.-P.].

Instruction 9. The question presented is whether the trial court improperly commented on the evidence by, in essence, directing a verdict on an element of the offense.

"Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." WASH. CONST. art. IV, § 16. This prohibits judges " 'from influencing the judgment of the jury on what the testimony proved or failed to prove.' " *State v. Zimmerman*, 130 Wn. App. 170, 174, 121 P.3d 1216 (2005) (quoting *Bardwell v. Ziegler*, 3 Wash. 34, 42, 28 P. 360 (1891)), *review granted*, 157 Wn.2d 1012 (2006). "It is thus error for a judge to instruct the jury that 'matters of fact have been established as a matter of law.' " *Zimmerman*, 130 Wn. App. at 174 (quoting *State v. Becker*, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997)). . . .

A judicial comment in a jury instruction is not a structural error or prejudicial per se. *State v. Levy*, 156 Wn.2d 709, 725, 132 P.3d 1076 (2006). Rather, it is presumed prejudicial, and the State bears the burden of showing the absence of prejudice unless the "record affirmatively shows no prejudice could have resulted." *Levy*, 156 Wn.2d at 725. The State makes this

showing when, without the erroneous comment, no one could realistically conclude that the element was not met. *See Levy*, 156 Wn.2d at 726-27. On the other hand, the burden is not carried, and the error therefore prejudicial, where the jury conceivably could have determined the element was not met had the court not made the comment. *See [State v.] Jackman*, 156 Wn.2d [736,] 745[, 132 P.3d 136 (2006)].

*State v. Baxter*, 134 Wn. App. 587, 592-93, 141 P.3d 92 (2006).

¶21 Here, the trial court erred by commenting on the evidence in jury instruction 9. By instructing the jury that, as a matter of law, the State had proved that CPS "had lawful right to physical custody of" O.J.B.-P., the trial court improperly took the resolution of this factual question from the jury. While it was for the trial court to determine the validity of the May 11 custody order in the course of determining the admissibility of a copy of that order as an exhibit, it was for the jury to determine whether it believed the State's evidence and witnesses and whether the State had proved beyond a reasonable doubt that CPS had a "right to physical custody of" O.J.B.-P., an element of the charged offense.

¶22 We must determine whether the error was harmless. We conclude that it was. Our review of the record reveals that the trial court properly determined that the custody order was valid and that the custody order was properly admitted into evidence. The custody order issued by the juvenile court gave the State custody of O.J.B.-P., declaring, in pertinent part, that O.J.B.-P. "shall be taken into custody . . . under the supervision of DSHS." The custody order was admitted into evidence without objection. At trial, Tonya Do, a CPS social worker, testified that the custody order placed O.J.B.-P. in CPS custody. At trial, Boss offered no evidence to rebut this testimony. Accordingly, in this case, "no one could realistically conclude that the element was not met." *Baxter*, 134 Wn. App. at 593. Thus, we hold that, although the trial court erred by instructing the jury that "DSHS, Children's Protective Services and the

State of Washington had lawful right to physical custody of [O.J.B.-P.]," such error was harmless.

## V

¶23 The second issue raised at oral argument was neither addressed in the briefs nor raised in the trial court. This issue is a modified version of the issue raised by Boss and resolved in section III, *supra*. In the argument actually briefed, however, Boss's contention was that the trial court erred by not instructing the jury that Boss's knowledge of the validity of the May 11 custody order was an element of the offense of custodial interference in the first degree. At oral argument, this contention was revised. Boss now states that she meant to contend that the trial court erred by not instructing the jury that Boss's knowledge of CPS's "right to physical custody of" O.J.B.-P. was an implied element of the offense.

¶24 Of course, Boss's request for appellate relief based on this argument faces two significant procedural hurdles. First, it was not raised in this court until oral argument. Second, it was not raised in the trial court.

¶25 With regard to the first procedural hurdle, Boss requests the appellate court's grace, asserting that the argument advanced at oral argument is closely related to the argument actually briefed and that the issue as now framed and advanced is of great importance. We agree.

¶26 For Boss, however, getting over the second procedural hurdle is more problematic.

The general rule is that appellate courts will not consider issues raised for the first time on appeal. RAP 2.5(a); *State v. Tolias*, 135 Wn.2d 133, 140, 954 P.2d 907 (1998); *State v. McFarland*, 127 Wn.2d 322, 332-33, 899 P.2d 1251 (1995). However, a claim of error may be raised for the first time on appeal if it is a manifest error affecting a constitutional right. RAP 2.5(a)(3); *State v. Walsh*, 143 Wn.2d 1, 7, 17 P.3d 591 (2001); *Tolias*, 135 Wn.2d at 140.

Pursuant to RAP 2.5(a)(3), to raise an error for the first time on appeal, the error must be "manifest" and truly of constitu-

tional dimension. *State v. WWJ Corp.*, 138 Wn.2d 595, 602, 980 P.2d 1257 (1999); *State v. Scott*, 110 Wn.2d 682, 688, 757 P.2d 492 (1988). The defendant must identify a constitutional error and show how the alleged error actually affected the defendant's rights at trial. It is this showing of actual prejudice that makes the error "manifest," allowing appellate review. *McFarland*, 127 Wn.2d at 333; *Scott*, 110 Wn.2d at 688. If a court determines the claim raises a manifest constitutional error, it may still be subject to harmless error analysis. *McFarland*, 127 Wn.2d at 333; *State v. Lynn*, 67 Wn. App. 339, 345, 835 P.2d 251 (1992).

*State v. Kirkman*, 159 Wn.2d 918, 926-27, 155 P.3d 125 (2007). Moreover,

RAP 2.5(a)(3) does not permit *all* asserted constitutional claims to be raised for the first time on appeal, but only certain questions of "manifest" constitutional magnitude. *Scott*, 110 Wn.2d at 687, 688. This court has rejected the argument that all trial errors which implicate a constitutional right are reviewable under RAP 2.5(a)(3), noting that "[t]he exception actually is a narrow one, affording review only of 'certain constitutional questions.' " *Id*. at 687 (quoting RAP 2.5 cmt. (a) at 86 Wn.2d at 1152 (1976)). Exceptions to RAP 2.5(a) must be construed narrowly. *WWJ Corp.*, 138 Wn.2d at 603.

. . . .

"Manifest" in RAP 2.5(a)(3) requires a showing of actual prejudice. *Walsh*, 143 Wn.2d at 8; *McFarland*, 127 Wn.2d at 333-34. " 'Essential to this determination is a plausible showing by the defendant that the asserted error had practical and identifiable consequences in the trial of the case.' " *WWJ Corp.*, 138 Wn.2d at 603 (quoting *Lynn*, 67 Wn. App. at 345).

*Kirkman*, 159 Wn.2d at 934-35.

¶27 Boss's present contention is that proof of her knowledge of CPS's right to custody of her child is an implied element of the offense of custodial interference in the first degree. Again, the relevant statute provides, in pertinent part:

A relative of a child under the age of eighteen . . . is guilty of custodial interference in the first degree if, with the intent to

deny access to the child . . . by a parent, guardian, institution, agency, or other person having a lawful right to physical custody of such person, the relative takes, entices, retains, detains, or conceals the child . . . from a parent, guardian, institution, agency, or other person having a lawful right to physical custody of such person and:

(a) Intends to hold the child . . . permanently or for a protracted period.

RCW 9A.40.060(1).

¶28 The "to convict" instruction given to the jury in this case followed the language of the statute and instructed the jury to find Boss guilty if the State proved beyond a reasonable doubt the following:

(1) That the defendant is a relative of [O.J.B.-P.], a child under the age of eighteen;

(2) That on or about the period of time intervening between May 31, 2006 through August 22, 2006, the defendant, with the intent to deny access to [O.J.B.-P.] by an institution, agency or person having a lawful right to the physical custody of such person, took, enticed, retained, detained, or concealed [O.J.B.-P.] from an institution, agency or person having a lawful right to the physical custody of such person and intended to hold [O.J.B.-P.] permanently or for a protracted period; and

(3) That any of the acts occurred in the State of Washington.

Instruction 10.

¶29 Boss argues that, pursuant to this instruction, the State could satisfy its burden of proof by proving to the jury that CPS was, in fact, an agency having a lawful right to the physical custody of O.J.B.-P. without proving that Boss knew that CPS had such a right. Boss persuasively argues that the legislature did not intend to criminalize the actions of a parent who—absent knowledge of the government's right to physical custody of the parent's child—denies the government physical possession of the parent's child. We agree.

¶30 At trial, the State presented overwhelming evidence that CPS was "an institution, agency or person having a

lawful right to the physical custody of such person," "such person" being O.J.B.-P. Thus, the jury was, in effect, instructed that, to convict Boss, the State had to prove that

(1) [Boss] is a relative of [O.J.B.-P.], a child under the age of eighteen;

(2) That on or about the period of time intervening between May 31, 2006 through August 22, 2006, [Boss], with the intent to deny access to [O.J.B.-P.] by [CPS], took, enticed, retained, detained, or concealed [O.J.B.-P.] from [CPS] and intended to hold [O.J.B.-P.] permanently or for a protracted period; and

(3) That any of the acts occurred in the State of Washington.

Hence, the jury could have convicted Boss without finding that she had knowledge of CPS's right to custody of her child.

¶31 The legislature has declared that

[t]he general purposes of the provisions governing the definition of offenses are:

. . . .

(b) To safeguard conduct that is without culpability from condemnation as criminal.

RCW 9A.04.020(1).

¶32 Absent knowledge of the government's right to physical custody of a parent's child, the parent acts without culpability in denying such physical custody to agents of the government. Boss is correct that an implied element of the offense of custodial interference in the first degree is her knowledge of the agency's "lawful right to physical custody" of her child.[2]

¶33 To be entitled to appellate relief, however, Boss must satisfy the requirements of RAP 2.5(a)(3), as discussed in *Kirkman*. She fails to do so.

---

[2] The commonly-utilized jury instruction that "[a]cting knowingly or with knowledge also is established if a person acts intentionally" does not address this concern. *See* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.02, at 150 (2d ed. 1994). Proof of Boss's intent to keep the child from CPS does not establish that she knew that, by doing so, she was keeping the child from an agency "with a lawful right to physical custody" of the child.

¶34 Boss's claim that the trial court did not instruct the jury on all elements of the offense presents a question of constitutional magnitude. On the merits, our analysis of the issue leads to a conclusion that Boss is correct and that her knowledge of CPS's "lawful right to physical custody of" her child was an implied element of the offense.

¶35 However, the error is not a manifest one. "It is [the] showing of actual prejudice that makes the error 'manifest.'" *Kirkman*, 159 Wn.2d at 927. Boss cannot make a plausible showing that the claimed error had practical and identifiable consequences in her trial because she cannot show that she was actually prejudiced by the claimed error. At trial, the evidence was overwhelming that Boss actually knew of the court orders giving CPS the right to physical custody of O.J.B.-P. In fact, the record reveals that Boss did not contest this evidence and that the question of her knowledge was never a focus of the trial court litigation. Indeed, "no one could realistically conclude that the element was not met." *Baxter*, 134 Wn. App. at 593. In such circumstances, Boss cannot demonstrate actual prejudice resulting from the claimed error. Thus, the error is not a manifest one. Accordingly, Boss cannot obtain appellate relief on this basis.

¶36 Affirmed.

GROSSE and AGID, JJ., concur.

Review granted at 165 Wn.2d 1019 (2009).