223 P.3d 506 (2009)
167 Wash.2d 710
STATE of Washington, Respondent,
v.
Cynthia Crisaundra BOSS, and
Paul Anthony Pelts, and each of them, Petitioners.
No. 81897-5.
Supreme Court of Washington, En Banc.
Argued October 13, 2009.
Decided December 17, 2009.
*507 Thomas Michael Kummerow, Washington Appellate Project, Seattle, WA, for Petitioner.
Brian Martin McDonald, King County Prosecutor's Office, Seattle, WA, for Respondent.
*508 C. JOHNSON, J.
¶ 1 This case involves a challenge to a conviction for first degree custodial interference pursuant to RCW 9A.40.060. Cynthia Boss was charged with intentionally denying Child Protective Services (CPS) access to her daughter, O.J.B-P., after CPS obtained a custody order awarding CPS legal custody of O.J.B-P. Boss argues the trial court committed reversible error because jury instruction 10 omitted one express element (lawfulness of the custody order) and one implied element (her knowledge of CPS's right to custody of her daughter) of first degree custodial interference and jury instruction 9 impermissibly commented on the evidence. The Court of Appeals affirmed Boss's conviction, concluding (1) the lawfulness of the custody order was a question for the trial court to decide as a matter of law; (2) although Boss's knowledge of CPS's right to physical custody of O.J.B-P. was an implied element of first degree custodial interference, the issue could not be raised on appeal; and (3) the trial court's comment on the evidence was harmless error. We affirm on a slightly different basis, concluding (1) the lawfulness of the custody order was a question for the trial court to decide as a matter of law, (2) knowledge of the right to physical custody is not an implied element of first degree custodial interference, and (3) Boss was not prejudiced by the trial court's comment on the evidence.

FACTS
¶ 2 O.J.B-P., the biological daughter of Boss and Paul Pelts, was born February 15, 2006. Prior to O.J.B-P.'s birth, CPS had filed dependency proceedings regarding Boss's two other children.[1] Upon learning of O.J.B-P.'s birth, CPS filed a dependency petition in juvenile court. On May 11, 2006, after determining that a risk of imminent harm to O.J.B-P. existed, the court issued a custody order granting the Department of Social and Health Services (DSHS) temporary custody of O.J.B-P. That same day, CPS representatives went to Boss's apartment to obtain physical custody of O.J.B-P., but the child could not be found. A hearing took place the following day, at which the court issued a shelter care order continuing CPS's legal supervision over O.J.B-P. That evening, CPS representatives returned to Boss's apartment and served Pelts with the order.
¶ 3 Because CPS's attempts to locate O.J.B-P. over the course of the next few days were unsuccessful, CPS obtained a writ of habeas corpus for her. On May 30, Boss informed a DSHS employee over the telephone that she was not going to make O.J.B-P. available to the agency. The following day, Boss was served with the writ of habeas corpus. Because she refused to divulge O.J.B-P.'s location, she was taken into custody. While in court, Boss was served with copies of the May 11 custody order, the shelter care order, and the writ of habeas corpus, but refused to provide any information to help CPS locate O.J.B-P.
¶ 4 At a second court hearing held June 1, Boss told the court that she could retrieve O.J.B-P. if she were released. Boss was released from custody later that day, but did not bring O.J.B-P. with her or otherwise make her available to CPS at the hearing on June 2. Another hearing was scheduled for June 8, but Boss, who had moved out of her apartment, did not appear. On August 22, a social worker with CPS was notified that O.J.B-P. had been found in Houston, Texas. The social worker flew to Houston where she took custody of O.J.B-P. and returned her to Washington.

PROCEDURAL HISTORY
¶ 5 The State charged Boss with first degree custodial interference.[2] Boss moved in *509 limine to preclude the State from introducing evidence relating to CPS's basis for seeking the custody order, specifically, CPS's history with Boss and her older children. After the prosecutor indicated that the State did not intend to offer this evidence, Boss's attorney challenged the lawfulness of the custody order. He argued that the court issued the order based upon what it "knew about the other children" and that the State should have been required to show there were grounds to believe O.J.B-P. was in danger. Report of Proceedings (RP) (Jan. 31, 2007) at 4. In response to Boss's argument about the custody order, the court stated, "[t]hat's for the judge, not the jury, I would assume. Otherwise, all that stuff that you don't want in, it is all coming in." RP (Jan. 31, 2007) at 5. When the court questioned whether Boss could challenge the lawfulness of the custody order, Boss's attorney acknowledged "the general proposition that if there is an order in place from the court, one must obey the order and not try to do an end-run around it," and stated he could find no law directly on point. RP (Jan. 31, 2007) at 6. He also conceded that "the lawfulness of the [custody] order ... isn't something [that] we can necessarily attack in this forum." RP (Feb. 7, 2007) at 4.
¶ 6 Boss made no objection when the State offered the custody order and writ into evidence at trial.[3] Later, the prosecutor asked the trial court to take judicial notice of the custody order for the purpose of instructing the jury that CPS had a lawful right to physical custody of O.J.B-P., as of the date the custody order was entered, May 11, 2006. The trial court concluded it possessed the authority to determine whether the juvenile court had lawfully entered the custody order and concluded it had. The jury instructions provided by the trial court included instruction 9, which instructed the jury CPS had a lawful right to custody of O.J.B-P., and instruction 10 (the "to convict" instruction), which provided the elements of first degree custodial interference. The jury convicted Boss as charged.
¶ 7 On appeal, Boss claimed instruction 10 omitted two elements of the crime: (1) the lawfulness of the custody order and (2) Boss's knowledge of the lawfulness of the custody order. At oral argument, Boss modified her argument regarding the second element and argued instead that her knowledge of CPS's right to physical custody of O.J.B-P. was an implied element of the crime. Additionally, the Court of Appeals, sua sponte, raised the issue of whether the trial court had, in instruction 9, commented on the evidence by instructing the jury that CPS had a lawful right to custody of O.J.B-P.
¶ 8 The Court of Appeals affirmed Boss's conviction. State v. Boss, 144 Wash.App. 878, 184 P.3d 1264 (2008). The court concluded that the lawfulness of the custody order was a question for the trial court to decide as a matter of law. The court agreed with Boss's argument that her knowledge of CPS's right to physical custody of O.J.B-P. was an implied element of first degree custodial interference but concluded that Boss could not raise this issue for the first time on appeal because she did not show that the error was manifest. Finally, the court ruled that the trial court had commented on the evidence by instructing the jury that, as a matter of law, the State had proved CPS had a lawful right to physical custody of O.J.B-P. The court held, however, that the error was harmless in light of the uncontested evidence admitted at trial.

ISSUES
1. Whether the lawfulness of the custody order was a question for the trial court to decide as a matter of law (Jury Instruction 10).
2. Whether Boss's knowledge of CPS's right to physical custody of O.J.B-P. was an implied element of first degree *510 custodial interference (Jury Instruction 10).
3. Whether the trial court's comment on the evidence merits reversal (Jury Instruction 9).

ANALYSIS
¶ 9 We review alleged errors of law in jury instructions de novo. State v. Miller, 156 Wash.2d 23, 27, 123 P.3d 827 (2005).

Lawfulness of the Custody Order
¶ 10 Boss argues instruction 10 omitted the element of the lawfulness of the custody order. In support of this argument, she claims RCW 9A.40.060 expressly includes the lawfulness of the order as a required element of a "to convict" instruction and determination of this element was within the province of the jury.
¶ 11 The language of the statute for first degree custodial interference provides in part:
A relative of a child under the age of eighteen or of an incompetent person is guilty of custodial interference in the first degree if, with the intent to deny access to the child or incompetent person by a parent, guardian, institution, agency, or other person having a lawful right to physical custody of such person, the relative takes, entices, retains, detains, or conceals the child or incompetent person from a parent, guardian, institution, agency, or other person having a lawful right to physical custody of such person and:
(a) Intends to hold the child or incompetent person permanently or for a protracted period.
RCW 9A.40.060(1) (emphasis added). In order for the jury to convict Boss of first degree custodial interference, the State had to prove, among other elements, that a person or entity other than Boss had a "lawful right to physical custody" of O.J.B-P. To prove this element, the State relied on the custody order giving CPS custody of O.J.B-P. Boss contends that the jury should have been required to determine whether that order was lawfully entered, alleging that the order's lawfulness is a fact that must be proved to sustain a conviction and must therefore be an element of the crime. We disagree.
¶ 12 The language of instruction 10 mirrors the language of the statute:
To convict the defendant of the crime of custodial interference in the first degree, each of the following elements of the crime must be proved beyond a reasonable doubt:
(1) That the defendant is a relative of [O.J.B-P.], a child under the age of eighteen;
(2) That on or about the period of time intervening between May 31, 2006 through August 22, 2006, the defendant, with the intent to deny access to [O.J.B-P.] by an institution, agency or person having a lawful right to the physical custody of such person, took, enticed, retained, detained, or concealed [O.J.B-P.] from an institution, agency or person having a lawful right to the physical custody of such person and intended to hold [O.J.B-P.] permanently or for a protracted period; and
(3) That any of the acts occurred in the State of Washington.
CP 45 (emphasis added). Instruction 10 contains the same elements as RCW 9A.40.060, including whether a person or entity other than Boss had a "lawful right to physical custody" of O.J.B-P. We reject Boss's argument that instruction 10 omits an element of the statute.
¶ 13 Whether a trial court may determine the lawfulness of a court order, as a matter of law, in the context of a prosecution for custodial interference, is an issue of first impression in Washington. However, in the context of prosecution for domestic violence no-contact orders, we have established that the lawfulness of a court order is a question for the trial court to decide as a matter of law. Miller, 156 Wash.2d at 24, 123 P.3d 827. The reasoning of Miller applies with equal force to the custody order at issue herein.
¶ 4 In Miller, the defendant requested a "to convict" instruction that would have required the jury to determine the lawfulness of the no-contact order he was charged with *511 violating. The trial court gave a "to convict" instruction that did not include the lawfulness of the court order relied upon by the State but, rather, simply required the jury to determine whether a no-contact order existed. We held that while the existence of a nocontact order is an element of the crime of violating such an order, the lawfulness of the order "is a question of law appropriately within the province of the trial court to decide as part of the court's gate-keeping function." Miller, 156 Wash.2d at 24, 123 P.3d 827. The crime included an element of existence, not lawfulness of the court order.
¶ 15 Similarly, whether CPS had a custody order for O.J.B-P., i.e., a lawful right to custody, was a question of fact within the province of the jury. Whether the order itself was lawful, i.e., whether the court granting the order was authorized to do so, whether the order was adequate on its face, and whether the order complied with the underlying statutes, is a matter of law within the province of the trial court.[4]
¶ 16 Relying on Miller, the Court of Appeals reasoned that it was the trial court's role to determine whether the custody order was valid, and hence relevant:
The trial court gave Boss's counsel a number of opportunities to dispute the custody order's validity. The trial court ultimately ruled, however, that the order was lawfully entered. Because this ruling was a proper exercise of the trial court's "gate-keeping function" to determine the custody order's validity as a matter of law, the trial court did not err by declining to include the question of the order's validity as an element of the offense in the "to convict" instruction.
Boss, 144 Wash.App. at 886, 184 P.3d 1264. We agree. While the existence of the custody order is an element of first degree custodial interference, the lawfulness of such an order is not.

Boss's Knowledge of CPS's Right to Physical Custody of O.J.B-P.
¶ 17 Boss argues instruction 10 omits the element of whether Boss had knowledge of CPS's right to the physical custody of O.J.B-P. She argues the element, while not expressly within RCW 9A.40.060, is implied by the common law. Boss's counsel raised this issue for the first time during oral argument before the Court of Appeals. The Court of Appeals accepted Boss's argument, "construing" the statute to conclude the implied knowledge element was omitted in the instruction. However, the court went on to hold that Boss could not raise this issue for the first time on appeal because she did not show that omission of the element was manifest error. In her supplemental briefing before this court, Boss does not appear to argue that the elements of the crime include an implied element of knowledge.[5] Somewhat oddly, the State seems to concede in its briefing that knowledge is an implied element of the crime. But like the Court of Appeals, the State argues any error in the instruction was harmless.
¶ 18 The initial problem in construing this statute is that neither party has pointed us to any deficiency in the statute, constitutional or otherwise, that requires "construing" RCW 9A.40.060 to add an element not otherwise present in the statute. The Court of Appeals pointed to no statutory deficiency, we cannot find any, and we conclude the statute requires no construction.
¶ 19 Knowledge of the existence of a custody order is inherent in the intentional element of the offense. A person cannot "intentionally" commit first degree custodial interference without being on notice of the underlying order. The State must establish a custody order existed and the defendant intentionally violated the order. The State must establish a defendant is aware of the *512 existence of the order to prove the defendant intentionally violated it. The State did so. We disagree with the Court of Appeals and hold that while knowledge of the custody order is involved in the prosecution of the crime, this knowledge is inherent in the intent requirement of first degree custodial interference. We do not have to "construe" RCW 9A.40.060 to add the element to the statute because it is already there.

Comment on the Evidence
¶ 20 Boss argues instruction 9 commented on the evidence by instructing the jury that CPS had a lawful right to custody of O.J.B-P.[6]
¶ 21 "Judges shall not charge juries with respect to matters of fact, nor comment thereon, but shall declare the law." Wash. Const. art. IV, § 16. It is error for a judge to instruct the jury "that matters of fact have been established as a matter of law." State v. Becker, 132 Wash.2d 54, 64, 935 P.2d 1321 (1997).
¶ 22 Instruction 9 provided: "As of May 11, 2006, DSHS, Children's Protective Services and the State of Washington had [sic] lawful right to physical custody of [O.J.B-P]." CP 44. We agree that the improper "comment" in instruction 9 was in the trial court's incorporation of specific facts that commented upon the elements of instruction 10, i.e., the specific reference to CPS's lawful right to custody of O.J.B-P. As discussed above, whether CPS had a lawful right to custody is an element of first degree custodial interference and a question of fact within the province of the jury. While it was proper for the trial court to determine the lawfulness of the May 11 custody order in the course of determining the admissibility of that order, it was for the jury to determine whether it believed the State's evidence and witnesses and whether the State had proved beyond a reasonable doubt that CPS had a right to physical custody of O.J.B-P. on account of the lawful custody order.[7]
¶ 23 By commenting on the evidence, instruction 9 was an error. Boss claims that the comment is an error meriting reversal; the Court of Appeals concluded the error was harmless. Boss, 144 Wash.App. at 889, 184 P.3d 1264. The harmless error analysis, however, does not apply to judicial comment claims. "With trial-type errors, the Neder harmless error analysis asks the court to determine whether the result could have been the same without the error, which is a different standard than the presumption of prejudice we apply in our judicial comment cases under article IV, section 16." State v. Levy, 156 Wash.2d 709, 725, 132 P.3d 1076 (2006) (citing Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)).
¶ 24 A judicial comment on the evidence in a jury instruction is presumed prejudicial, and the burden is on the State to show that the defendant was not prejudiced, unless the record affirmatively shows that no prejudice could have resulted. State v. Jackman, 156 Wash.2d 736, 743, 132 P.3d 136 (2006). The State makes this showing when, without the erroneous comment, no one could realistically conclude that the element was not met. Levy, 156 Wash.2d at 725-27, 132 P.3d 1076. The proper analysis requires the State to bear the burden to show that Boss was not prejudiced by instruction 9.
¶ 25 Citing Becker, Boss argues that whether the State has provided sufficient proof that CPS had a lawful right to custody of O.J.B-P is irrelevant because "the only thing that matters is whether the trial court's comment took an element away from the jury's consideration." Suppl. Br. of Pet'r at 17 (citing Becker, 132 Wash.2d at 65, 935 P.2d 1321). But Boss misreads Becker. Whether or not sufficient evidence exists to prove the substance of the comment is only relevant to whether the comment is an error, *513 not to whether the error was harmless. See Becker, 132 Wash.2d at 65, 935 P.2d 1321 ("Whether the State produced sufficient evidence for a rational juror to find YEP [(Youth Education Program)] was a school is irrelevant to whether the jury instruction was correctly drafted." (emphasis added)).
¶ 26 Here, the State has met its burden to show that Boss was not prejudiced by the comment. The record fully supports the conclusion that the custody order was both lawful and properly admitted into evidence. The custody order gave the State custody of O.J.B-P., declaring, in pertinent part, that O.J.B-P. "shall be taken into custody... under the supervision of DSHS." Ex. 1, RP (Feb. 7, 2007) at 105. The trial court admitted the custody order into evidence without objection from Boss. At trial a CPS social worker testified that the custody order placed O.J.B-P. in CPS custody; Boss offered no evidence to rebut this testimony. Boss failed to raise this issue until oral argument before the Court of Appeals. Accordingly, no one could realistically conclude that the element was not met in this case. The trial court's error in commenting on the evidence through instruction 9 was therefore not prejudicial.

CONCLUSION
¶ 27 We affirm Boss's conviction, concluding (1) the lawfulness of the custody order was a question for the trial court to decide as a matter of law, (2) Boss's knowledge of CPS's right to physical custody of O.J.B-P. was not an implied element of first degree custodial interference, and (3) Boss was not prejudiced by the trial court's comment on the evidence.
WE CONCUR: ALEXANDER, Chief Justice, and OWENS, FAIRHURST, MADSEN, JOHNSON, SANDERS, STEPHENS, and CHAMBERS, Justices.
NOTES
[1] Boss has two older children, but Pelts is not their biological father. These children were the subject of dependency proceedings due to allegations of physical and sexual abuse at the hands of Boss and Pelts. Both children had been placed in court-ordered protective custody.
[2] The first degree custodial interference statute provides in part:

A relative of a child under the age of eighteen... is guilty of custodial interference in the first degree if, with the intent to deny access to the child ... [by an] agency, or other person having a lawful right to physical custody of [the child], the relative takes, entices, retains, detains, or conceals the child ... [from an] agency, or other person having a lawful right to physical custody of [the child] and ... [i]ntends to hold the child ... permanently or for a protracted period.
RCW 9A.40.060(1)(a).
[3] The shelter care order was not entered into evidence due to the prejudicial nature of some of its contents.
[4] Challenges to the lawfulness of an order should be made to the issuing court and not another judge. Miller, 156 Wash.2d at 31, 123 P.3d 827.
[5] Boss argues the elements of the offense of custodial interference in the first degree are "(1) a relative of a child, (2) with intent to deny access to the child, (3) takes the child, (4) from someone who has legal custody, (5) and intends to permanently or for a protracted period hold the child." Pet. for Review at 6-7; Suppl. Br. of Pet'r at 9. Absent from these elements is the parent's knowledge of the agency's right to the physical custody of the child.
[6] This issue was also not raised at trial, nor in Boss's briefing to the Court of Appeals, but during oral argument before the Court of Appeals.
[7] The State concedes this error, admitting that the instruction 9, as drafted, "went too far" in incorporating specific facts. The State suggests the proper wording is: "an agency has a lawful right to custody of a child if granted by court order." We agree that such language would avoid the error present here.